James Henry AUDETT, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15929.

United States Court of Appeals
Ninth Circuit.

March 31, 1959.

Rehearing Denied May 4, 1959.

Schofield, Hanson, Bridgett, Marcus & Jenkins, Leslie G. MacGowan, San Francisco, Cal., for appellant.

Ben Peterson, U. S. Atty., R. M. Whittier, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before POPE and JERTBERG, Circuit Judges and YANKWICH, District Judge.

YANKWICH, District Judge.

On January 25, 1956, the Grand Jury for the United States District Court in and for the District of Idaho, Central Division, presented an Indictment against the appellant, James Henry Audett, charging him in Count I with attempting to enter and entering the First National Bank of Cottonwood, Cottonwood, Idaho, the deposits of which were insured by the Federal Deposit Insurance Corporation, with intent to commit the crime of larceny,—a violation of the federal law.[1] In Count II it was charged that, on the same day, he took and carried away from the First National Bank of Cottonwood, Cottonwood, Idaho, money, property and things of value, the total value of which was $30,000, which were alleged to belong and to be in the custody, care, control, management and possession of the bank, with the intent to steal and purloin them.[2]

On April 2, 1956, the appellant, appearing in court with one of his counsel, Dean E. Miller, was arraigned and entered his plea of not guilty. A trial was had before a jury on April 9 and 10 of the same year. On the latter date the jury found the appellant guilty on both counts. The Court, on the same day, sentenced the appellant to the custody of the Attorney General for a period of twenty years on Count I and ten years on Count II, the sentences to run concurrently. Additional facts will appear further on in the opinion.

This is on appeal from the Judgment.

## I

### The Right To Counsel

The most fundamental issue raised in this case is that of improper representation by counsel in violation of the rights guaranteed by the Constitution of the United States. Both the due process clause[3] and the right to counsel[4] are invoked.

It has become axiomatic that, in the absence of intelligent waiver, the right to the assistance of counsel in criminal cases

"is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty."[5]

And prejudice will be inferred from the denial of assistance of counsel.[6]

It is argued on behalf of the appellant that there was such denial here, because he was represented at the trial by the firm of Meek and Miller, consisting of Frank E. Meek and Dean E. Miller, and that Dean E. Miller was, at the time of such representation, disqualified from practicing before the United States District Court because he was a United States Commissioner for the District of Idaho, stationed at Caldwell, Idaho.

It is insisted that the United States Commissioner is an "officer or em-

1. 18 U.S.C. § 2113(a).

2. 18 U.S.C. § 2113(b).

3. Constitution of the United States, Amendment V.

4. Constitution of the United States, Amendment VI.

5. Johnson v. Zerbst, 1938, 304 U.S. 458, 466–467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461.

6. Glasser v. United States, 1942, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680.

ployee" of the administrative Office of the United States who is forbidden by the Judicial Code to practice law.[7] The argument is grounded upon the erroneous premise that, because Section 607 is contained in Part III of the Judicial Code which relates to "court officers and employees", the disqualification applies. But the fallacy of the argument lies in the fact that this part consists of nine chapters,[8] in which the Administrative Office and the United States Commissioners are treated and their duties defined *separately*. The Chapter also includes the entire judiciary from the Supreme Court down to the Customs Court. And if the designation of "officers and employees" in the title of these chapters were sufficient to make the commissioners subject to the limitations contained in the Code against the practice of law, then the appellation would be broad enough to encompass the entire judiciary, the clerks and the marshals. Yet it is significant that whenever the Congress has intended to prohibit the practice of law by officers of the United States *it has done so by specific enactment,* whether the enactment relate of judges of the courts,[9] marshals,[10] or court clerks.[11]

 The fact that the Administrative Office passes on the lawful fees of the United States commissioners [12] and furnishes them with offices, equipment and supplies [13] is not sufficient to make them "officers and employees" of the Ad-

ministrative Office any more than the payment by the Administrative Office of expenses of the judges and of the cost of their books and equipment makes the judges of the various courts "officers and employees" of the Administrative Office.

The only reason for the separate inclusion of the phrases "and the lawful fees of United States Commissioners" [14] and "the offices of the United States Commissioners" [15] is because, with few exceptions, the commissioners receive, in lieu of compensation, the fees allowed by law. Commissioners, such as National Park Commissioners, who receive salaries fixed by the court which appoints them, are required to account for fees collected by them as "public monies".[16] All commissioners are inferior officers, adjuncts of the courts, possessing and exercising limited judicial powers of their own.[17] They are appointed by the courts.[18] Their fees and expenses are determined by statute.[19] As there is a maximum provided for the fees of each commissioner, he is required to account for them to the Clerk of the District Court in which he resides.[20]

The only direct limitation as to the qualifications of commissioners is that which provides that a person holding a civil or military office or employment under the United States or who is employed by any justice or judge of the United States

7. 28 U.S.C. § 607.

8. 28 U.S.C. Chapters 41 to 57, covering § 601 to § 963.

9. 28 U.S.C. § 454.

10. 28 U.S.C. § 556.

11. 28 U.S.C. § 955.

12. 28 U.S.C. § 604(a) (6).

13. 28 U.S.C. § 604(a) (9).

14. 28 U.S.C. § 604(a) (6).

15. 28 U.S.C. § 604(a) (9).

16. 28 U.S.C. § 634.

17. Todd v. United States, 1895, 158 U.S. 278, 282, 15 S.Ct. 889, 39 L.Ed. 982; Grin v. Shine, 1902, 187 U.S. 181, 187, 23 S.Ct. 98, 47 L.Ed. 130; Go-Bart

Importing Co. v. United States, 1931, 282 U.S. 344, 353–354, 51 S.Ct. 153, 75 L.Ed. 374; Freeman v. United States, 9 Cir., 1946, 160 F.2d 69, 70; Swanson v. United States, 9 Cir., 1955, 224 F.2d 795, 799. In a recent case the Supreme Court, referring, *arguendo,* to the persons referred to in §§ 601–963 of Title 28 of the Judicial Code, characterizes them as "the group of persons who serve as conventional court officers and are regularly treated as such in the laws." Cammer v. United States, 1956, 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474.

18. 28 U.S.C. § 631.

19. 28 U.S.C. § 633.

20. 28 U.S.C. § 636.

"shall not at the same time hold the office of United States commissioner".[21]

■ If we exclude the one provision relied on, the inapplicability of which has been fully demonstrated, there is no provision prohibiting commissioners from practicing law in the courts of the United States.[22] That this was the intention of the Congress is also shown by an amendment which became effective on September 2, 1957, and which specifically provides for certain additional emoluments to United States Commissioners

"who are required to devote full time to the performance of the duties of the office * * * and who do not engage in the practice of law".[23]

■ This warrants the conclusion that the Congress, by enacting this provision, recognized that commissioners not in this class, i. e., those who, *like Mr. Miller in this case, are part-time commissioners receiving fees for such services as they perform and retaining them as compensation, devoting part time only to their office,* are permitted to practice law in the courts of the United States. This accords with the policy obtaining in other instances, such as part-time referees in bankruptcy who are also permitted to practice law before the courts of the United States, except in bankruptcy cases, while full-time referees may not do so before any court.[24]

■ Granted that one who represents a person accused of crime should exercise his duty with highest fidelity, we cannot, in the light of the preceding analysis, see how a commissioner of the United States who, in certain instances, exercises the right of a committing magistrate which may be exercised by state judicial officers "empowered to commit persons charged with offenses against the laws of the United States",[25] thereby disqualifies himself from acting, *at the choice of a person accused of an offense against the United States,* as his attorney, in the trial of a criminal case with the initiation of which he has had nothing to do. At best, the right to a preliminary examination may be waived.[26] The waiver does not involve the surrender of any constitutional right.[27] And while the hearing before a commissioner is a step in the institution of a criminal proceeding, it should not act as a Bill of Attainder against the commissioner so as to deny him the right to act as counsel for a defendant before the courts of the United States. The warning of a great Justice comes to mind:

"Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." [28]

21. 28 U.S.C. § 631(b). Significantly, this provision does not apply to part-time referees, nor to clerks or deputies of United States courts whose appointment as commissioner is approved by the Director of the Administrative Office of the United States.

22. 28 U.S.C. § 607.

23. 28 U.S.C. § 633(8) (c), Pub.L. 85–276, Secs. 1, 2, 71 Stat. 600.

24. Bankruptcy Act of 1938, § 39, sub. b (2), 11 U.S.C.A. § 67, sub. b(2), as amended June 28, 1946, c. 512, § 5, 60 Stat. 326; July 7, 1952, c. 579, § 12, 66 Stat. 424.

25. Rule 5(a), Federal Rules of Criminal Procedure, 18 U.S.C.

26. Rule 5(c), Federal Rules of Criminal Procedure.

27. Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. See, United States v. Walker, 2 Cir., 1952, 197 F.2d 287.

28. Mr. Justice Cardozo in Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674.

**842**

## II

### Waiver

█ Because the contention here made as to the status of commissioners, *if correct*, would affect many part-time commissioners in this Circuit, we have discussed it with great fullness. We are led to the inevitable conclusion that there is no disqualification for a United States Commissioner to represent a person accused of crime in the trial of a criminal case before a court of the United States, in a matter with which he was not connected as a commissioner.

In the case before us there is the added fact that after the appellant employed the firm of which Mr. Dean E. Miller, the United States Commissioner, was a partner, the question of possible disqualification was fully discussed with the appellant. There is in the record a letter dated March 27, 1956, written by the senior partner of the firm which indicates that the matter had been discussed fully with the United States Attorney and, informally, with the Judge of the Court by counsel for the appellant. Appended to it was a waiver. The letter and waiver are reproduced in the margin.[29]

29. "March 27, 1956
"Sherman F. Furey, Jr.,
"United States Attorney,
"District of Idaho, Boise, Idaho
"Re: United States vs. James Henry
Audett
"Dear Sir:
"As you know, I discussed recently with you the fact that my partner, Dean E. Miller, is a duly appointed, qualified and acting United States Commissioner, my purpose being to ascertain whether in your opinion it would be necessary for him to resign as such because of this firm's employment by James Henry Audett to represent him in his defense against the indictment filed against him, and upon which he is to be arraigned on April 2nd, in the Federal Court Room at Moscow, Idaho.
"I also informally discussed this matter with Judge Clark.
"This is to advise you that our client, James Henry Audett, has been fully advised of this matter and of the fact that Mr. Miller is a United States Commis-

The experienced trial judge, not content with the written waiver, which was filed in court on March 29, 1956, brought up the matter in open court while the jury was being selected. The following proceedings occurred:

"The Court: Before we continue to select a jury for this case, I have a matter to take up here.

"The Defendant being present, it has come to the attention of the Court that it might be well to see if the Defendant is fully advised that Mr. Miller, who is of counsel for the Defendant, is a Commissioner,—a United States Commissioner for the District of Idaho. You are, of course, aware of that?

"The Defendant: Yes, sir.

"The Court: And you, Mr. District Attorney, are aware of that?

"Mr. Furey: Yes, Your Honor.

"The Court: Do you waive any question as to his appearing here as counsel for you, Mr. Audett?

"The Defendant: Yes, sir.

"The Court: Now, you may proceed."

The appellant here is not a stranger to the law. There is a record of his con-

sioner, and as a matter of fact, will be asked to read this letter before it is mailed to you, and to endorse thereon his waiver of any objection he might have to the fact Dean is a United States Commissioner. He is further being advised that at the time of his arraignment he should make an oral waiver of any objection he might have in the matters.
"Yours very truly,
"Meek & Miller
"/S/ By Frank E. Meek,
"Frank E. Meek.
FEM:lr
"Waiver
"I, James Henry Audett, hereby certify that I have read the above and foregoing letter, that I have been fully advised that Dean E. Miller is a United States Commissioner, and hereby expressly waive any objection that I might have to his being such in the matter of being one of my attorneys in the above referred to matter.
"/s/ James Henry Audett
"(Endorsed): Filed March 29, 1956."

viction of another bank robbery in the Eighth Circuit.[30] And there is evidence in the record that he had written a book called "The Rap Sheet" relating to his various experiences. So, despite the argument that he is of Indian extraction, we are not confronted here with an illiterate person who can rightly claim that he may not have understood the proceedings and the scope of the waiver.

 Waivers of the most fundamental rights, such as the right to the assistance of counsel,[31] trial by jury,[32] and consent to trial by a jury of less than twelve,[33] are permissible. And we see no reason why, assuming that an unconscious conflict of interest might exist between the duty of one of his attorneys towards him, and that attorney's duty arising from his employment as a United States Commissioner, the appellant, when apprised of the fact, having chosen not only to retain the commissioner as one of his counsel, but having both in writing and orally in open court waived any question that might arise from such conflict, can be heard to complain.

**30.** Audett v. United States, 8 Cir., 1942, 132 F.2d 528.

**31.** Johnson v. Zerbst, supra, Note 5; Glasser v. United States, supra, Note 6.

**32.** Rule 23(a), Federal Rules of Criminal Procedure. See, Schick v. United States, 1904, 195 U.S. 65, 71–72, 24 S.Ct. 826, 49 L.Ed. 99; Adams v. United States, 1942, 317 U.S. 269, 275–278, 63 S.Ct. 236, 87 L.Ed. 268; Echert v. United States, 8 Cir., 1951, 188 F.2d 336, 339, 26 A.L.R.2d 752; United States v. Cantor, 2 Cir., 1954, 217 F.2d 536, 538; Mason v. United States, 10 Cir., 1957, 250 F.2d 704, 705.

**33.** Patton v. United States, 1930, 281 U.S. 276, 312–313, 50 S.Ct. 253, 74 L.Ed. 854; Rule 23(b), Federal Rules of Criminal Procedure.

**34.** Kyle v. United States, 9 Cir., 263 F.2d 657.
"An accused should never have counsel not of his choice forced upon him." Duke v. United States, 9 Cir., 1958, 255 F.2d 721, 724.

If a situation existed such as confronted this Court recently,[34] where a conflict between two defendants represented by the same attorney appeared, resulting in possible detriment to one of them, the problem of adequate representation might be inquired into. But no such situation confronts us here. The defendant was tried separately. Both members of the law firm employed fully protected the rights of the defendant. Every witness was cross-examined. The examination of one of the accomplices, Walter Clyde McClure, by Mr. Miller was quite extensive. It covers twelve pages in the printed record. The plea of guilty to the bank robbery and the fact that he is an inmate of a State prison were brought out. The cross-examination of the other accomplice, Donald Wayne Hall, by Mr. Frank E. Meek was even more extensive. It covers twenty-nine pages, in which his previous conviction was stressed.

At the conclusion of the Government's case, Mr. Miller made a motion to acquit. Significantly, the motion was broad enough to cover practically *all* the points made in this appeal, excepting only the question of disqualification. It is reproduced in the margin.[35]

By the same token, having chosen his counsel, he should not be allowed to claim deprivation of due process through inadequate representation, unless the record warrants the conclusion that there was *gross and deliberate misrepresentation.*

**35.** "Mr. Miller: If the Court please, comes now the defendant and moves the Court for Judgment of acquittal on the grounds and for the reasons that at the close of the evidence on behalf of the Government the evidence is insufficient to sustain conviction of the offenses charged in the Indictment, and particularly that there has been no evidence of any real character tending to connect the defendant with the commission of this crime other than the testimony of accomplices; that the testimony of the accomplices, while we realize it is sufficient to sustain a conviction under the rules of this court, in this particular instance it is between the two of them, there is no corroboration of any nature tending to connect the defendant with the commission of this crime, and there is no cor-

The appellant did not take the stand. No other witnesses were offered on his behalf. The record does not indicate whether this was upon the advice of his counsel or not. Assuming that it was, we can draw no inference of dereliction of duty, absent a competent showing that it was anything other than the attorney's best judgment in the circumstances. No exceptions were taken to the instructions by either side. A reading of the instructions convinces us that the Court advised the jury fully as to the law of the case, even giving the cautionary instructions as to the testimony of an accomplice, which are to be discussed further on in the opinion.

Claims of inadequate representation are frequent. But on close examination they will be found, in most instances, to be merely a defendant's dissatisfaction, after conviction, with the manner in which his case was handled. The answer to a contention of this character was given by the Court of Appeals for the Tenth Circuit, in these words:

"But, one who appears before the court with counsel employed for his defense is not deprived of his constitutional right to the assistance of counsel merely because in retrospection he concludes that such representation did not meet his standards of effectiveness." [36]

■ ▇ There is no showing that witnesses existed who could have placed the appellant elsewhere at the time when the two accomplices placed him at the bank when the offense was committed, or that any other witnesses existed that would have contradicted the consistent and unshaken story of the two accomplices, which the physical facts testified to by others verify, as to the commission of the offenses and the appellant's participation in it. That, in the view of present counsel, the cross-examination may not have been "searching" enough is not sufficient to cast discredit on the competence of the attorneys who represented the appellant at the trial.

After all, there are few trial lawyers who, on examining the record of a trial critically, would not say that "they might have done better". But such surmises would not warrant this Court in branding the defense in this case as so inadequate as to amount to denial of the right to counsel.

### III

### The Sufficiency Of The Evidence

▇ There remains to consider the sufficiency of the evidence in the record to sustain the conviction. So doing we bear in mind that our function is not to weigh and consider the contradictions and inconsistencies which counsel for the appellant finds in the testimony of the two accomplices in connecting the appellant with the robbery. Our province is to determine whether there is substantial evidence to support the verdict of the jury taking the view of the evidence most favorable to the Government. Ours is not the function to determine whether, on the record, reasonable doubt could or

roboration of the testimony of the accomplices. For this reason the defendant moves the Court for judgment of acquittal.

"The Court: The Motion will be denied."

36. Moss v. Hunter, 10 Cir., 1948, 167 F. 2d 683, 684. See, Merritt v. Hunter, 10 Cir., 1948, 170 F.2d 739, 741; Kinney v. United States, 10 Cir., 1949, 177 F. 2d 895, 897. To use the oft-quoted language of Judge Wilbur of this court, in Ex parte Haumesch, 9 Cir., 1936, 82 F.2d 558, 559, a defendant

"having been represented at the trial of his case before a duly constituted court and jury by an attorney of his own selection, cannot complain that he has been deprived of his constitutional right to be represented by counsel because the attorney so selected was, as he claims, unskillful or incompetent in the handling of the case."

And see the language of Judge Minton in United States ex rel. Weber v. Ragen, 7 Cir., 1949, 176 F.2d 579, 586; and the more recent language of Chief Judge Biggs in United States ex rel. Darcy v. Handy, 3 Cir., 1953, 203 F.2d 407, 426–427; and see, Anderson v. Bannan, 6 Cir., 1958, 250 F.2d 654, 655.

would exist.[37] The function of the Court of Appeals in a case of this character was summed up with brevity by the Supreme Court, in these words:

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." [38]

The testimony may be given in brief summary. The character of the bank as a national depository on the day it was entered and the money and things of a total value of $30,000 taken is not in dispute.

The appellant and Hall met at Portland, Oregon in the latter part of September 1953. At a small town adjoining Portland,—Gladstone, Oregon—appellant asked Hall how he was doing and if he was making any money or if he was hard up for money, to which he answered "he was pretty well broke", whereupon appellant asked him if he wished to "accompany him on a burglary, to burglarize a bank". Hall declined the invitation. He saw him again in the middle of October.

In the meantime, Hall had talked to Walter McClure, the other accomplice, at whose house he was staying. About October 24, the two went to the appellant and told him that they accepted the proposition and would go with him. Appellant asked them to pick up some tools, which they did. These consisted of a bar

"with a pry bar on one end and a point on the other, something like a marlin spike on the other end, and some wood drills, bits, and two drift punches approximately twelve inches long by about three-sixteenths, and a coil of rope and a six pound hammer."

On October 26, Hall and McClure met the appellant, who was in a Studebaker car from which they transferred some tools to McClure's car. They followed the appellant three or four blocks, where he left his car and joined them. They drove to Colton on the Washington side of the Columbia River where they attempted to burglarize a bank but were unsuccessful. They then drove to Lewiston, Idaho. Hall and McClure used assumed names in registering at a hotel. The appellant registered in his own name. The next day, after eating breakfast, they drove to Cottonwood, Idaho. After looking over the Cottonwood bank they drove to Arco, Idaho. On October 28, 1953, they returned to Cottonwood and "cased" the bank. After darkness, they entered the Cottonwood bank by breaking a skylight and lowering a rope coil through the opening. Hall slid down the rope, opened the door to the rear alley allowing McClure and the appellant to enter. The bricks from the safe were removed. Appellant and McClure entered the vault and returned with a "little leather secretary" and silver and gold coins and other property removed from the safe deposit boxes, amounting to the total value of $30,000. The plunder was later divided equally between the three participants.

Appellant participated in the planning of the entering of the safe and the removal of the property. The three left the building through the back door leaving the tools and the rope at the place of the burglary. All three were later arrested.

Part of the money and property was recovered from Hall and McClure. All were separately indicted on charges of violating the Bank Robbery Statute.[39] Hall and McClure pleaded guilty and testified for the Government at the trial.

37. Craig v. United States, 9 Cir., 1936, 81 F.2d 816, 827–828; Banks v. United States, 9 Cir., 1945, 147 F.2d 628, 629; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, 616; Woodard Laboratories, Inc. v. United States, 9 Cir., 1952, 198 F.2d 995, 998; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, 742–743.

38. Glasser v. United States, supra Note 6, 315 U.S. at page 80, 62 S.Ct. at page 469.

39. 18 U.S.C. § 2113(a) and (b).

Counsel for the appellant concede that Hall and McClure agree very closely as to the manner in which the crime was committed, but point to certain inconsistencies in their narrative as to the appellant's connection with the crime.

■ As already pointed out, it was for the jury to resolve these and other inconsistencies beyond a reasonable doubt. They evidently did so by finding the appellant guilty. And ours is not the function to determine whether, in view of these inconsistencies, a reasonable doubt could or did exist. The jury's verdict determined this question.[40]

■ The Court gave to the jury a cautionary instruction which left it to them to determine whether they would convict on the uncorroborated testimony of the accomplices. The full instruction is reproduced in the margin.[41] No exception was taken to this instruction. It is now argued that it should have been more elaborate and should have emphasized the motive of the accomplices in securing "freedom or a reduced sentence" in exchange for this testimony. In view of the absence of a request for additional instructions no error can be predicated on refusal of instructions or error asserted in the instructions given.[42] Of course, in rare cases the court may notice plain error.[43]

■ That situation does not exist here, for the instruction given covered fully the law as applied in this circuit.[44] In truth, appellant's counsel are asking us to adopt the rule, which obtains in certain states, that conviction cannot be obtained on the uncorroborated testimony of an accomplice. The short answer is that the federal doctrine which permits such conviction is sound and

40. See cases cited in Note 36.

41. "An accomplice is defined to be one concerned with others in the commission of a crime. It is a settled rule in this country that even accomplices in the commission of a crime are competent witnesses, and that the Government has the right to admit their testimony and that of the jury to consider it. The testimony of accomplices, however, is to be received with caution and weighed with great care, and while it is true that a jury may convict on such testimony alone, yet the jury should not rely on it unsupported for a conviction, unless it produces in their minds a positive conviction of its truth. If it does, the jury should act upon it.

"You are instructed, therefore, that you are to receive the testimony of an accomplice with caution and examine it with care. This does not mean, however, that you are to arbitrarily reject it. It only means that you are to examine it with care; and if, having done so, you believe its truth, then you are to give it the same credence as the testimony of any other witness. In considering the evidence, you should consider his appearance, his manner of testifying, the probability, or improbability of the facts to which he has testified; his motives, or interest in the case; whether or not his evidence is consistent with itself and with the other evidence or admitted facts of the case, and if, having considered his testimony in the light of all these rules you believe that he has told the truth, then I instruct you that the defendant can be convicted on this evidence alone, if that evidence convinces you that this defendant is guilty beyond a reasonable doubt.

42. Rule 30, Federal Rules of Criminal Procedure.

43. Rule 52(b), Federal Rules of Criminal Procedure; Lash v. United States, 1 Cir., 1955, 221 F.2d 237, 240; Herzog v. United States, 9 Cir., 1956, 235 F.2d 664, 666–668; Smith v. United States, 6 Cir., 1956, 230 F.2d 935, 939; United States v. Private Brands, Inc., 2 Cir., 1957, 250 F.2d 554, 557–558. The power should be used sparingly and confined to cases in which miscarriage of justice would, otherwise, result: Bell v. United States, 8 Cir., 1958, 251 F.2d 490, 494; United States v. Vasen, 7 Cir., 1955, 222 F.2d 3, 5–6; Horton v. United States, 6 Cir., 1958, 256 F.2d 138, 141; and see, Smith v. United States, 9 Cir., 1949, 173 F.2d 181, 184.

44. Craig v. United States, supra Note 37. Moreover, the entire charge in the case conformed to the test laid down by this court for instructions in criminal cases: "In a criminal case the court must instruct on all essential questions of law involved, whether or not it is requested to do so." Samuel v. United States, 9 Cir., 1948, 169 F.2d 787, 792.

consonant with the rule obtaining in the law of evidence that the testimony of one witness, if believed, is sufficient to prove a fact,[45] is approved by the Supreme Court and is firmly established in the law of this and other circuits.[46]

■■■ The cautionary instruction, although desirable, is not "an absolute necessity." [47]

The rule requiring corroboration of accomplices is of continental European origin. In the English system questions concerning it did not appear until the end of the Seventeenth Century. Of its purport, Wigmore writes:

"As a matter of common law, then, the doctrine was universally understood (except by one or two Courts) as amounting to no rule of evidence, but merely to a *counsel of caution* given by the judge to the jury. It followed that the jury might or might not regard the caution by acquitting upon an uncorroborated accomplice's testimony; that they alone were to determine whether corroboration existed and was sufficient; and that the trial judge's omission of the caution was of itself not a ground for a new trial,

being a matter solely for the trial judge's discretion." [48] (Emphasis theirs.)

He condemns the reasons behind a contrary policy. The implication that an accomplice testifying for the Government *must have* relied on promise, express or implied, of immunity or leniency,—an argument which counsel in this case have stressed, he rejects by stating:

"The promise of immunity, then, being the essential element of distrust, but not being invariably made, no invariable rule should be fixed as though it had been made. Moreover, if made, its influence must vary infinitely with the nature of the charge and the personality of the accomplice. *Finally, credibility is a matter of elusive variety, and it is impossible and anachronistic to determine in advance that, with or without promise, a given man's story must be distrusted."* [49] (Emphasis added.)

So there are ample reasons, historical, psychological and other, for not changing a cautionary rule into a rigid and dogmatic method of proof for ordinary criminal offenses. The exception in treason [50] or perjury [51] should not obtain in

45. Wigmore on Evidence, 3rd Ed., 1940, § 2034. The rule requiring multiple witnesses in treason, perjury and the like, is a departure from this doctrine based on historical and other considerations. So also is the rule requiring corroboration. Wigmore, op. cit., § 2032.

46. Holmgren v. United States, 1910, 217 U.S. 509, 523–524, 30 S.Ct. 588, 54 L. Ed. 861; Caminetti v. United States, 1917, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Kuhn v. United States, 9 Cir., 1928, 24 F.2d 910, 914; Craig v. United States, supra Note 37, 81 F.2d at page 827; Pina v. United States, 9 Cir., 1948, 165 F.2d 890, 891–892; Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, 444; Doherty v. United States, 9 Cir., 1956, 230 F.2d 605. And see, Lyles v. United States, 5 Cir., 1957, 249 F.2d 744, which contains an interesting comment on this rule, especially as applied by this court.

47. In Pina v. United States, supra Note 46, this court approved the following

language of the Court of Appeals for the Second Circuit as to the need for such instruction:
"The warning is never an absolute necessity. It is usually desirable to give it; in close cases it may turn the scale; but it at most is merely a part of the general conduct of the trial, over which the judge's powers are discretionary, like his control over cross-examination, or his comments on the evidence. If he thinks it unnecessary—at least when, as here, the guilt is plain—he may properly refuse to give it. Such we understand to be the upshot of the decisions." United States v. Becker, 2 Cir., 1933, 62 F. 2d 1007, 1009.

48. Wigmore, op. cit., § 2056.

49. Wigmore, op. cit., § 2057.

50. Constitution of the United States, Article III, § 3, cl. 2; 18 U.S.C. § 2381.

51. 18 U.S.C. § 1621.

the trial of the ordinary criminal case. In the case of treason the provision is embedded in the Constitution.[52] In the case of perjury the rule "is deeply rooted in past centuries." [53]

 Any change of the rule should be made by Congressional legislation applicable to all federal courts, and not by judicial fiat, which, unless it be that of the Supreme Court, would affect certain federal courts only.

 What has just been said would require the affirmance of the judgment in its entirety. There is one fact, however, of which we take notice as plain error.[54] The judgment in this case was rendered on April 10, 1956, and the sentence imposed was the maximum of twenty years on Count I, which charged entering the bank with intent to commit larceny,[55] and the maximum of ten years on Count II, which charged the robbery of the bank of property of the total value of $30,000.[56] Subsequent to that date, the Supreme Court held that the two subdivisions constitute but one offense and that the imposition of two sentences is illegal.[57]

The trial judge, by imposing the maximum sentence on Count I and allowing the sentence on Count II to run concurrently, indicated that he intended the maximum sentence to be twenty years. Thus the sentence imposed on Count II became merged in the sentence imposed on Count I. In these circumstances the policy to be followed is to vacate the lower sentence on the second count.[58] The fact that the sentences run concurrently and that, consequently, only twenty years would be served, should not stand in the way of such action because

"it is well understood that a multiplicity of sentences impairs a prisoner's opportunities for pardon or parole." [59]

The Judgment will therefore be modified by striking therefrom the sentence imposed on Count II. As so modified the Judgment is affirmed.

---

52. Constitution of the United States, Article III, § 3, cl. 2.

53. Weiler v. United States, 1945, 323 U.S. 606, 608–609, 65 S.Ct. 548, 550, 89 L.Ed. 495; Wigmore, op. cit., §§ 2030–2044.

54. Rule 52(b), Federal Rules of Criminal Procedure. See cases cited in Note 43.

55. 18 U.S.C. § 2113(a).

56. 18 U.S.C. § 2113(b).

57. Prince v. United States, 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370; Heflin v. United States, 79 S.Ct. 451.

58. Remine v. United States, 6 Cir., 1947, 161 F.2d 1020, 1021; Price v. United States, 6 Cir., 1951, 193 F.2d 523, 524; United States v. Di Canio, 2 Cir., 1957, 245 F.2d 713, 717, which involved sentences under § 2113(a) and § 2113(d) of Title 18.

59. Hibdon v. United States, 6 Cir., 1953, 204 F.2d 834, 839, 37 A.L.R.2d 1130.