**UNITED STATES of America,
Appellee,**

v.

**Morris Garfield WILLIAMS, Jr.,
Appellant.
No. 24923.**

United States Court of Appeals,
Ninth Circuit.
Nov. 23, 1970.

Norman R. Atkins (argued), of Atkins & Jacobson, Beverly Hills, Cal., for appellant.

David F. Curnow (argued), Ass't U.S. Atty., Robert L. Meyer, U.S. Atty., David R. Nissen, Chief, Criminal Div., Los Angeles, Cal., for appellee.

Before ELY, KILKENNY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Morris Garfield Williams Jr. was found guilty, following a jury trial, on six counts of an indictment charging violations of federal narcotics laws arising out of two separate drug transactions. A motion for judgment of acquittal was granted as to the first three counts which concerned a transaction alleged to have occurred on February 9, 1968. Appellant now stands convicted on two counts of violating 21 U.S.C. § 174[1] and one count of violating 26 U.S.C. § 4705(a).[2]

All three counts concern a transaction alleged to have occurred on February 20, 1968.

The court sentenced the appellant to the custody of the Attorney General for a period of 5 years on each of the three

1. Count IV, pertinent part: " * * * knowingly and unlawfully received, concealed, and facilitated the concealment and transportation of 76.450 grams of cocaine, a narcotic drug, which, as the defendants then and there well knew, previously had been imported into the United States of America contrary to United States Code, Title 21, Section 174."

Count V, pertinent part: " * * * knowingly and unlawfully sold and facilitated the sale to Agent Frank G. Tarallo of the Federal Bureau of Narcotics of 76.-450 grams of cocaine, a narcotic drug, which, as the defendant then and there well knew, had been imported into the United States of America, contrary to United States Code, Title 21, Section 174."

2. Count VI, pertinent part: " * * * knowingly and unlawfully did sell, barter, exchange and give away 76.450 grams of cocaine, a narcotic drug, to Agent Frank G. Tarallo of the Federal Bureau of Narcotics without obtaining from him a written order on a form issued for that purpose by the Secretary of the Treasury of the United States."

counts, IV, V and VI, the sentences to be served concurrently.

This court's jurisdiction to review the conviction rests on 28 U.S.C. § 1291.

On this appeal the appellant contends:

1. That Counts IV and V must be reversed because there was a failure of proof of the illegal importation of the cocaine and of appellant's knowledge of the illegal importation;

2. That there was no evidence that the appellant intended a sale of cocaine in violation of 26 U.S.C. § 4705(a);

3. That evidence was generally insufficient to support the judgment of conviction on any of the three counts IV, V and VI.

We recount the essential facts which were presented to the court and jury. In doing so we view them, as we must, in the light most favorable to the government since the government was the prevailing party.[3]

Proof of illegal importation of cocaine and knowledge of that illegal importation is an essential element of the crimes charged against Williams. He complains of a failure of proof.

Frank Tarallo, an agent of the Federal Bureau of Narcotics and Dangerous Drugs, acting in an undercover capacity testified that he had had conversations with one Wallace Wong about making a purchase of cocaine. During the course of these conversations Wong introduced Tarallo to the appellant. On February 19, 1968, Agent Tarallo met with Wong at Wong's apartment, following an appointment made by telephone. Tarallo testified that Wong stated that he had five ounces of cocaine that belonged to "Morrisy" (the appellant). Wong further stated that Morrisy wanted to sell it. Tarallo then asked where it came from and Wong replied: "From Mexico." R.T. 90. Arrangements were then made for the purchase to take place the following day at an address on LaSalle Street in Los Angeles.

Tarallo and another undercover man, Agent Gordon, arrived at the rendezvous point at the appointed hour but Wong did not appear. Shortly, a person "in the location" informed Tarallo that Wong would call him in a few minutes. This occurred and Wong asked if Tarallo had the money. Tarallo answered that he did and asked Wong if he had the "coke." Wong said, "yes," and then went on to say that "Morrisy wants to talk to you." Thereupon Williams got on the phone and after repeating the inquiries about having the money and "coke" ready, Williams instructed the agent to "come down here to China Boy's," indicating Mr. Wong's apartment.[4] R.T. 91.

Tarallo and his partner Gordon went immediately to the second address. When they arrived Tarallo observed Williams sitting in the car outside. The two undercover agents proceeded to Wong's apartment where further assurances were exchanged about the money and the merchandise being available. Wong said Morrisy had the cocaine outside. Wong then left and Tarallo followed. Tarallo saw Wong go to the front door and observed the appellant standing at the rear of his car. The appellant pointed to a particular spot. Wong went to the spot and returned with a bag containing the cocaine. Wong was then placed under arrest and appellant arrested shortly thereafter.

Other agents were on hand at nearby locations and one of them, Mr. Ortiz, was located at a vantage point directly across the street from the LaSalle ad-

---

3. Glasser v. United Sttaes, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Miller v. United States, 382 F.2d 583 (9th Cir. 1967) cert. denied, 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285 (1968); Thomas v. United States, 369 F.2d 372 (9th Cir. 1966).

4. Tarallo knew the appellant because he had had prior dealings with Wong and Williams on February 9, 1968, concerning the purchase of cocaine.

dress keeping the appellant under surveillance. He observed appellant place a package in the spot where Wong later picked up the bag of cocaine and verified Tarallo's testimony about appellant's signal to Wong. He also made a positive in-court identification of the appellant. Likewise Agent Gordon verified the events which took place in his presence.

■ ■ Appellant's argument that proof of illegal importation and knowledge of illegal importation was inadequate because it was based upon a statement of Wong that the cocaine came from Mexico, and not an admission of appellant, is unconvincing. With respect to the admissibility of Wong's statement, no objection was made at the time and no motion to strike later. Had such an objection been made it could not have been sustained. The admissions and statements of a co-defendant are admissible as against the other even in the absence of a conspiracy count where there is independent evidence of a concert of action. Kay v. United States, 421 F.2d 1007 (9th Cir. 1970); United States v. Messina, 388 F.2d 393 (2d Cir.), cert. denied, 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); Fuentes v. United States, 283 F.2d 537 (9th Cir. 1960); United States v. Olweiss, 138 F.2d 798 (2d Cir.), cert. denied, 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047 (1943). The rule was most eloquently stated by Judge Learned Hand in *Olweiss:*

"It was proper to charge them as principals—which they probably were in any event—even though they were only accessories. (§ 550, Title 18, U. S.C.A.); and any evidence admissible against Olweiss was admissible against them, so far as it consisted of conduct in furtherance of the joint venture in which all three were engaged. The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis; their admission does not depend upon the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal." 138 F.2d at 800.

Nor should the rule be confined to those who are co-defendants at the same trial.[5] Judge Hand relied on the general principles of agency as did the Supreme Court in Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 72, 62 L.Ed. 260 (1917), involving a similar situation in a civil context:

"The rule of evidence is commonly applied in criminal cases, but is of general operation; indeed, it originated in the law of partnership. It depends upon the principle that when any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them."

Here the evidence of concerted action between Wong and Williams was amply demonstrated. It was established by the testimony of three agents. That being so, the statement of Wong that the cocaine being sold came from Mexico was clearly admissible.

■ Although Wong testified, he did not deny the statement attributed to him concerning the source of the contraband. The appellant took the stand and denied all connection with the negotiations, the arrangements for the sale, and its consummation. His position was that he was an innocent bystander. The jury heard him testify. They did not believe him but did believe the testimony of the government agents, including what Tarallo said Wong stated as to the foreign

---

5. Appellant's motion for severance was granted and he was not tried with his co-defendant, Wong.

origin of the cocaine. The credibility of witnesses and the weight to be given their testimony is for the jury to decide. "[T]he uncorroborated testimony of an accomplice is sufficient to sustain a conviction" and, "the testimony of one witness, if believed, is sufficient to prove a fact." Proffit v. United States, 316 F. 2d 705, 707 (9th Cir. 1963); Audett v. United States, 265 F.2d 837 (9th Cir. 1959); United States v. Gudino, 432 F. 2d 433 (9th Cir. 1970). Because the importation of any cocaine is unlawful, 21 U.S.C. § 173,[6] the uncontradicted statement of Wong concerning the Mexican origin of the cocaine was sufficient to prove both the fact of illegal importation and the fact of Wong's knowledge of the illegal importation.

The jury was properly instructed upon the question of a common scheme or plan and the caution to be used in weighing the uncorroborated statements of an accomplice to the scheme. The jury was also properly instructed on the necessity of proof of unlawful importa-tion. No exception was taken to these instructions at the trial and no issue was raised about them here.[7]

◼ The second issue raised by appellant on appeal is that there was no evidence that he intended a sale of cocaine in violation of 26 U.S.C. § 4705(a). The statute makes it an offense to sell a narcotic drug "except in pursuance of a written order of the person to whom such article is sold" on an official form provided for that purpose. No such form was tendered or was available. A sale without it was a violation of the statute. The appellant acknowledges that a violation of 26 U.S.C. § 4705(a) does not require a criminal intent. Davis v. United States, 306 F.2d 317 (8th Cir. 1962), cert. denied, 372 U. S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963). Here the totality of the circumstances, the clandestine nature of the transaction, the devious manner of communication and of meeting, the secretive arrangements, all belie a bona fide legal

---

6. Section 173 provides an exception, not applicable to this case, for the importation of "such amounts of * * * coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate uses * * * · under such regulations as the Commissioner of Narcotics shall prescribe. ※ · ※ ※"

7. See also Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Roselli, 432 F.2d 879, 895–896 (9th Cir. 1970); Carbo v. United States, 314 F.2d 718, 735 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964).

The dissent views the result herein as judicial sleight of hand that achieves an end run around Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), wherein it was held that it could not be presumed from the fact of possession that one knew that cocaine had been illegally imported. But we do not presume knowledge of illegal importation on appellant's part from the fact of possession of cocaine by either Wong or himself. Here, by virtue of Wong's statement, there is direct evidence of the illegal source of the cocaine and knowledge thereof on Wong's part. We have simply ap-proved the trial court's application of a traditional rule of evidence for common schemes and held that Wong's statement is admissible as evidence against Williams on ·the issue of the latter's knowledge. The independent evidence of a concert of action which validates the application of this rule is abundant: (1) appellant was introduced to Agent Tarallo by Wong; (2) Agent Tarallo conversed with both appellant and Wong during the same phone call concerning the transaction in question; (3) appellant was sitting in a car outside of Wong's apartment, the scene of the transaction; (4) appellant was observed as he placed a package in a spot near the front of Wong's apartment building; and (5) appellant was observed as he pointed to a spot from which Wong retrieved a package containing the cocaine near the front of the apartment building. Thus, we merely hold that Wong's statement was admissible against appellant, and, taking this evidence together with the other evidence in the light most favorable to the government, the uncontradicted statement was sufficient for the jury to find, as it did, that the cocaine was illegally imported and appellant had knowledge of that illegal importation.

transaction. This contention of appellant is patently frivolous.

The final argument that the evidence is insufficient to support the judgment of conviction on any of the three counts, IV, V and VI, is a restatement of the arguments already discussed.

The conviction is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. As I read the record, the prosecution evidence was insufficient to establish an essential element of the offenses charged in counts IV and V, namely, that Williams knew that the cocaine had been illegally imported. Long ago, our court held that it could not be presumed, from one's possession of cocaine, that he knew that such drug, widely manufactured in our country, had been illegally imported. Erwing v. United States, 323 F.2d 674 (9th Cir. 1963). In our opinion in that case, written by Judge Jertberg, we correctly anticipated the Supreme Court's later opinion in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

What do we have here? A person named Wong, with whom Williams was not charged to have engaged in a conspiracy, made a hearsay statement to someone, outside the presence of Williams, that the drug came "from Mexico." That is all. On the basis of that hearsay statement, the majority holds that Williams himself knew that the drug had been illegally imported from Mexico. In being able to jump this far, my good Brothers have found, I submit, a superjudicial, if not supernatural, degree of agility.[1]

1. My above observations have induced my Brothers to make additional comments, set forth in their footnote 7. It is said that I view the majority's reasoning "as judicial sleight of hand that achieves an end run around Turner v. United States," *supra*. While I have not expressed my views in precisely that way, my Brothers' employment of the description "sleight of hand" is reasonably accurate. As one, however, who is as interested in football as my Brothers apparently are, I never viewed their exercise as "an end run." The critical issue is whether the proof was sufficient to establish, beyond a reasonable doubt, that Williams knew that the cocaine was illegally imported. I cannot see that the evidence specified in items 1, 2, 3, 4, and 5 of the majority's footnote 7 is very directly related to the principal question. In me the majority's new footnote arouses the image, not of an "end run," but of the superb quarterback who, off the "I-Formation" or the "Wishbone-T," for example, undertakes to divert the attention of the opposition to one part of the field while the man with the ball is in some other place.