**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Ida Mae EVERIDGE, Defendant,
Appellant.**

**No. 73-2201.**

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1973.
Rehearing Denied Jan. 10, 1974.

Rubin Salter, Jr. (argued), Kipps & Salter, Tucson, Ariz., for defendant, appellant.

William C. Smitherman, U. S. Atty., Ronald Jennings, Stephen M. McNamee, Asst. U. S. Attys., P. Michael Drake (argued), Tucson, Ariz., for plaintiff, appellee.

Before ALDRICH,* ELY and CHOY, Circuit Judges.

ALDRICH, Senior Circuit Judge:

The issues on this appeal from a conviction of possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), require a somewhat detailed statement of the facts. In early February 1973, government narcotics undercover agent Fontenot met one Ogans in Tucson. Subsequently Ogans inquired if Fontenot was interested in purchasing heroin, and Fontenot said he had a customer. On February 20 Ogans came to Fontenot's room in the Tucson Inn for a prearranged discussion. He was accompanied by defendant, Ida Mae Everidge, not then identified by name. After some conversation in which narcotics were not mentioned, Ogans and Fontenot went outside to meet with Stewart, the purported customer, who, in fact, was another undercover agent. Ogans invited Stewart inside to talk with defendant, but Stewart refused. He and Ogans discussed terms. Ogans went back to the room, assertedly to check with defendant, and returned saying "she" was agreeable. Ogans then give Stewart a slip of paper with "her" telephone number and asked him to call

the next morning at 10:00 to arrange for delivery. On this occasion Stewart noted a blue-over-white Buick in the parking lot, with a registration number which proved to be defendant's.

February 21, the next morning, Stewart called the designated number and a woman answered, identifying herself as "Johnny." Without objection, Stewart testified to the voice being that of the defendant.[1] In addition to the voice identification, this telephone was shown to be listed to a neighbor in defendant's duplex apartment building. "Johnny" asked Stewart to call again at 6:00, which he did, and a meeting with Ogans was arranged for later that evening in the Inn's parking lot. That evening Ogans and Stewart met in the parking lot. Ogans said "she" had the stuff, but had not arrived. Ogans departed and returned with heroin, whereupon other agents manifested themselves and he was arrested.

During this time a blue-over-white Buick, with one occupant, unidentifiable because of the darkness, was seen in the parking lot. While Ogans was being arrested, this car drove off. It was pursued and found to be defendant's. Defendant, alone, was therein.

Defendant and Ogans were jointly indicted, but defendant was separately tried. Ogans did not testify. Defendant objects to the admission of Stewart's testimony of what Ogans told him on February 20 and 21, implicating her as the vendor or supplier, because of her inability to confront Ogans, relying principally upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The reliance is misplaced. It is true that, in *Bruton,* as an hypothesis to the mooted question whether a jury could be relied on to disregard an extra-judicial statement by a codefendant implicating the petitioner, the Court considered and held the statement inadmissible against him. That

---

* Honorable Bailey Aldrich, United States Senior Circuit Judge, First Circuit, sitting by designation.

1. Both parties, seemingly by some prior arrangement, skirted lightly over the basis for this identification.

particular statement clearly was such, being a post-arrest confession to the effect that declarant and petitioner had committed the crime. The Court explicitly observed, "There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned . . ." and "intimate[d] no view whatever" on such statement's admissibility. *Bruton,* therefore, does not help defendant. The later case of Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), a case directly involving the Confrontation Clause, destroys her. Taking note of the question reserved in note 3 of *Bruton,* the Court proceeded to answer it. "[W]e do not question the validity of the coconspirator exception applied in the federal courts." 400 U.S. at 80, 91 S.Ct. at 215.[2]

So much for defendant's invocation of the Confrontation Clause to defeat the coconspirator exception. His assertion that certain limited types of otherwise admissible hearsay may be excluded by reason of that clause, *see* California v. Green, 399 U.S. 149 at 155–156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), cannot support him. United States v. Johnson, 463 F.2d 216 at 217, n. 2 (9th Cir. 1972). If there could be any doubt as to this, it may be noted that *Dutton* was decided after *Green.*

■ In the case at bar the only question, therefore, is whether there was sufficient admissible evidence, apart from the contested statement itself, that defendant was a coconspirator. In this respect it is not necessary that the defendant be actually indicted as a conspirator; the question is merely whether there was proof of a sufficient con-

cert of action to show the individuals to have been engaged in a joint venture. United States v. Williams, 435 F.2d 642 (9th Cir. 1970), cert. denied, 401 U.S. 995, 91 S.Ct. 1241, 28 L.Ed.2d 533; [3] Kay v. United States, 421 F.2d 1007 (9th Cir. 1970). The evidence amply established such. The fact that some of this evidence post-dated the statements in question is of no consequence, so long as its natural tendency, when introduced, was to show the concert of action to have been existing at the time of the statement. On the above-recited evidence, quite apart from Ogans' statements to Stewart regarding the defendant, the conclusion was well warranted that defendant was involved in the activity in question at least as a co-principal.

■ Finally, defendant misconceives the applicability of the rule requiring the court, at least on request, to charge the jury that the testimony of an alleged accomplice is to be subjected to particular scrutiny. This rule, and the reasons for it, relate to testimony given by an accomplice in court. *See* United States v. Davis, 439 F.2d 1105 (9th Cir. 1971); Phelps v. United States, 252 F.2d 49 (5th Cir. 1958). We are not presently concerned with court testimony by Ogans serving to incriminate the defendant, for which he might well have special motives that the jury should consider, but with testimony by government agent Stewart of what Ogans had said, contemporaneously, during the course of the transaction. The rule does not apply to Stewart, nor does it in some retrospective manner to Ogans' extrajudicial utterances. The request was properly denied.

Affirmed.

2. It may be conceded that this particular statement was dictum, so far as the question actually decided was concerned. However, it was an easier point to reach, and would have followed, a fortiori, from the point decided. In fact, we do not read even the dis-

sent as expressing any doubts as to the correctness of the quoted statement. *See* 400 U.S. at 106, 91 S.Ct. 210.

3. Judge Ely's dissent in *Williams* was not to the principle, but to its application in that case.