Attilio De Cicco, Respondent, *v.* Joseph Schweizer, Appellant, Impleaded with Another.

**Marriage settlements —consideration — agreement between father and prospective husband of his daughter to pay daughter certain sum annually — when daughter, although not a party to the contract, may enforce contract and recover unpaid installment.**

Articles of agreement were entered into by defendant and his wife with a person who was affianced to and was to be married to their daughter. In consideration of that fact, the father promised the husband to pay a certain sum annually to the daughter. This action is brought by the assignee of the daughter and the husband to recover an unpaid installment. *Held*, that there was a sufficient consideration for the promise; that although the promise was to the husband it was intended for the benefit of the daughter, and when it came to her knowledge she had a right to adopt and enforce it, and in doing so she made herself a party to the contract.

*De Cicco* v. *Schweizer*, 166 App. Div. 919, affirmed.

(Argued October 15, 1917; decided November 13, 1917.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 2, 1915, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Willard Bartlett, Frank G. Wild* and *Elbridge G. Duvall* for appellant. There is no presumption of a consideration for the contract sued upon arising from the character of the instrument. (*Bender* v. *Been*, 78 Iowa, 283.) The fulfillment of an engagement to marry, subsisting at the time the instrument was executed, could not be a sufficient consideration for the promise of a third party to pay money. (Pollock on Cont. 161; *Vanderbilt* v.

*Schreyer*, 91 N. Y. 392; *Robinson* v. *Jewett*, 116 N. Y. 40; *Kramer* v. *Kramer*, 181 N. Y. 477; 2 Parsons on Cont. 437; Leake on Cont. [6th ed.] 444; *Cobb* v. *Cowdery*, 40 Vt. 25; *Conover* v. *Stillwell*, 34 N. J. L. 54; *Wescott* v. *Mitchell*, 95 Me. 377; *Ayers* v. *C., R. I. & P. R. Co.*, 52 Iowa, 478; *Ellison* v. *Jackson Water Co.*, 12 Cal. 542; *E. H. M. Co.* v. *Pringle*, 41 Neb. 265.) The instrument sued upon is not supported by any consideration and is, therefore, not an enforcible contract. (*Sarasohn* v. *Kamaiky*, 193 N. Y. 203; *Kramer* v. *Kramer*, 90 App. Div. 176; 181 N. Y. 477; *Johnston* v. *Spicer*, 107 N. Y. 185; *Borland* v. *Welch*, 162 N. Y. 104; *Phalen* v. *U. S. Trust Co.*, 186 N. Y. 178.)

*Michael Schneiderman* and *Gino C. Speranza* for respondent. The instrument made and executed by defendant on January 16, 1902, is a marriage settlement and the meaning and legality of its provisions should be construed and measured by the rule governing marriage settlements. (*Dickenson* v. *Seaman*, 193 N. Y. 18; *Gorham* v. *Fillmore*, 111 N. Y. 251.) The promise of the defendant is a binding contract and is amply sustained by valid considerations: (a) The consummation of the marriage with his daughter; (b) the mutual and reciprocal promise of his wife. (*Sarasohn* v. *Kamaiky*, 193 N. Y. 203; *Phalen* v. *U. S. T. Co.*, 186 N. Y. 178; *Kramer* v. *Kramer*, 90 App. Div. 176; *Buchanan* v. *Tilden*, 158 N. Y. 109; *Borland* v. *Welch*, 162 N. Y. 104; *Bouton* v. *Welch*, 170 N. Y. 554; *Peck* v. *Vandemark*, 99 N. Y. 29; Schouler on Domestic Relations, § 178.)

Cardozo, J. On January 16, 1902, " articles of agreement " were executed by the defendant Joseph Schweizer, his wife Ernestine, and Count Oberto Gulinelli. The agreement is in Italian. We quote from a translation the part essential to the decision of this controversy: " Whereas, Miss Blanche Josephine Schweizer, daughter

of said Mr. Joseph Schweizer and of said Mrs. Ernestine Teresa Schweizer, is now affianced to and is to be married to the above said Count Oberto Giacomo Giovanni Francesco Maria Gulinelli, Now, in consideration of all that is herein set forth the said Mr. Joseph Schweizer promises and expressly agrees by the present contract to pay annually to his said daughter Blanche, during his own life and to send her, during her lifetime, the sum of Two Thousand Five Hundred dollars, or the equivalent of said sum in Francs, the first payment of said amount to be made on the 20th day of January, 1902." Later articles provide that " for the same reason heretofore set forth," Mr. Schweizer will not change the provision made in his will for the benefit of his daughter and her issue, if any. The yearly payments in the event of his death are to be continued by his wife.

On January 20, 1902, the marriage occurred. On the same day, the defendant made the first payment to his daughter. He continued the payments annually till 1912. This action is brought to recover the installment of that year. The plaintiff holds an assignment executed by the daughter, in which her husband joined. The question is whether there is any consideration for the promised annuity.

That marriage may be a sufficient consideration is not disputed. The argument for the defendant is, however, that Count Gulinelli was already affianced to Miss Schweizer, and that the marriage was merely the fulfilment of an existing legal duty. For this reason, it is insisted, consideration was lacking. The argument leads us to the discussion of a vexed problem of the law which has been debated by courts and writers with much subtlety of reasoning and little harmony of results. There is general acceptance of the proposition that where A is under a contract with B, a promise made by one to the other to induce performance is void. The trouble

434     DE CICCO *v.* SCHWEIZER.

[221 N. Y.]     Opinion, per. CARDOZO, J.     [Nov.,

comes when the promise to induce performance is made by C, a stranger. Distinctions are then drawn between bilateral and unilateral contracts; between a promise by C in return for a new promise by A, and a promise by C in return for performance by A. Some jurists hold that there is consideration in both classes of cases (Ames, Two Theories of Consideration, 12 Harvard Law Review, 515; 13 id. 29, 35; Langdell, Mutual Promises as a Consideration, 14 id. 496; Leake, Contracts, p. 622). Others hold that there is consideration where the promise is made for a new promise, but not where it is made for performance (Beale, Notes on Consideration, 17 Harvard Law Review, 71; 2 Street, Foundations of Legal Liability, pp. 114, 116; Pollock, Contracts [8th ed.], 199; Pollock, Afterthoughts on Consideration, 17 Law Quarterly Review, 415; 7 Halsbury, Laws of England, Contracts, p. 385; *Abbott* v. *Doane*, 163 Mass. 433). Others hold that there is no consideration in either class of cases (Williston, Successive Promises of the Same Performance, 8 Harvard Law Review, 27, 34; Consideration in Bilateral Contracts, 27 id. 503, 521; Anson on Contracts [11th ed.], p. 92).

The storm-centre about which this controversy has raged is the case of *Shadwell* v. *Shadwell* (9 C. B. [N. S.] 159; 99 E. C. L. 158) which arose out of a situation similar in many features to the one before us. Nearly everything that has been written on the subject has been a commentary on that decision. There an uncle promised to pay his nephew after marriage an annuity of £150. At the time of the promise the nephew was already engaged. The case was heard before ERLE, Ch. J., and KEATING and BYLES, JJ. The first two judges held the promise to be enforcible. BYLES, J., dissented. His view was that the nephew, being already affianced, had incurred no detriment upon the faith of the promise, and hence that consideration was lacking.

Neither of the two opinions in *Shadwell* v. *Shadwell* can rule the case at bar. There are elements of difference in the two cases, which raise new problems. But the earlier case, with the literature which it has engendered, gives us a point of departure and a method of approach.

The courts of this state are committed to the view ✓ that a promise by A to B to induce him not to *break* his contract with C is void (*Arend* v. *Smith*, 151 N. Y. 502; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Robinson* v. *Jewett*, 116 N. Y. 40). If that is the true nature of this promise, there was no consideration. We have never held, however, that a like infirmity attaches to a promise by A, not merely to B, but to B and C jointly, to induce them not to *rescind* or *modify* a contract which they are free to abandon. To determine whether that is in substance the promise before us, there is need of closer analysis.

The defendant's contract, if it be one, is not bilateral. It is unilateral (*Miller* v. *McKenzie*, 95 N. Y. 575). The consideration exacted is not a promise, but an act. The Count did not promise anything. In effect the defendant said to him: If you and my daughter marry, I will pay her an annuity for life. Until marriage occurred, the defendant was not bound. It would not have been enough that the Count remained willing to marry. The plain import of the contract is that his bride also should be willing, and that marriage should follow. The promise was intended to affect the conduct, not of one only, but of both. This becomes the more evident when we recall that though the promise ran to the Count, it was intended for the benefit of the daughter (*Durnherr* v. *Rau*, 135 N. Y. 219). When it came to her knowledge, she had the right to adopt and enforce it (*Gifford* v. *Corrigan*, 117 N. Y. 257; *Buchanan* v. *Tilden*, 158 N. Y. 109; *Lawrence* v.

*Fox*, 20 N. Y. 268). In doing so, she made herself a party to the contract (*Gifford* v. *Corrigan, supra*). If the contract had been bilateral, her position might have been different. Since, however, it was unilateral, the consideration being performance (*Miller* v. *McKenzie, supra*), action on the faith of it put her in the same position as if she had been in form the promisee. That she learned of the promise before the marriage is a legitimate inference from the relation of the parties and from other attendant circumstances. The writing was signed by her parents; it was delivered to her intended husband; it was made four days before the marriage; it called for a payment on the day of the marriage; and on that day payment was made, and made to her. From all these circumstances, we may infer that at the time of the marriage the promise was known to the bride as well as the husband, and that both acted upon the faith of it.

The situation, therefore, is the same in substance as if the promise had run to husband and wife alike, and had been intended to induce performance by both. They were free by common consent to terminate their engagement or to postpone the marriage. If they forebore from exercising that right and assumed the responsibilities of marriage in reliance on the defendant's promise, he may not now retract it. The distinction between a promise by A to B to induce him not to break his contract with C, and a like promise to induce him not to join with C in a voluntary rescission, is not a new one. It has been suggested in cases where the new promise ran to B solely, and not to B and C jointly (Pollock, Contracts [8th ed.], p. 199; Williston, 8 Harv. L. Rev. 36). The criticism has been made that in such circumstances there ought to be some evidence that C was ready to withdraw (Williston, *supra*, at pp. 36, 37). Whether that is true of contracts to marry

is not certain. Many elements foreign to the ordinary business contract enter into such engagements. It does not seem a far-fetched assumption in such cases that one will release where the other has repented. We shall assume, however, that the criticism is valid where the promise is intended as an inducement to only one of the two parties to the contract. It may then be sheer speculation to say that the other party could have been persuaded to rescind. But where the promise is held out as an inducement to both ·parties alike, there are new and different implications. One does not commonly apply pressure to coerce the will and action of those who are anxious to proceed. The attempt to sway their conduct by new inducements is an implied · admission that both may waver; that one equally with the other must be strengthened and persuaded; and that rescission or at least delay is something to be averted, and something, therefore, within the range of not unreasonable expectation. If pressure, applied to both, and holding both to their course, is not the purpose of the promise, it is at least the natural tendency and the probable result.

The defendant knew that a man and a woman were assuming the responsibilities of wedlock in the belief that adequate provision had been made for the woman and for future offspring. He offered this inducement to both while they were free to retract or to delay. That they neither retracted nor delayed is certain. It is not to be expected that they should lay bare all the motives and promptings, some avowed and conscious, others perhaps half-conscious and inarticulate, which swayed their conduct. It is enough that the natural consequence of the defendant's promise was to induce them to put the thought of rescission or delay aside. From that moment, there was no longer a real alternative. There was no longer what philosophers call ·a " living " option. This in itself permits the inference of detriment (*Smith* v. *Chadwick,* 9

App. Cas. 187, 196; *Smith* v. *Land & House Corp.* 28 Ch. D. 7, 16; *Voorhis* v. *Olmstead*, 66 N. Y. 113, 118; *Fottler* v. *Moseley*, 179 Mass. 295). " If it is proved that the defendants with a view to induce the plaintiff to enter into a contract. made a statement to the plaintiff of such a nature as would be likely to induce a person to enter into the contract, it is a fair inference of fact that he was induced to do so by the statement" (BLACKBURN, L. J., in *Smith* v. *Chadwick, supra*). The same inference follows, not so inevitably, but still legitimately, where the statement is made to induce the preservation of a contract. It will not do to divert the minds of others from a given line of conduct, and then to urge that because of the diversion the opportunity has gone by to say how their minds would otherwise have acted. If the tendency of the promise is to induce them to persevere, reliance and detriment may be inferred from the mere fact of performance. The springs of conduct are subtle and varied. One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.

One other line of argument must be considered. The suggestion is made that the defendant's promise was not made *animo contrahendi*. It was not designed, we are told, to sway the conduct of any one; it was merely the offer of a gift which found its *motive* in the engagement of the daughter to the Count. Undoubtedly, the prospective marriage is not to be deemed a consideration for the promise " unless the parties have dealt with it on that footing " (Holmes, Common Law, p. 292; *Fire Ins. Assn.* v. *Wickham*, 141 U. S. 564, 579). " Nothing is consideration that is not regarded as such by both parties " (*Philpot* v. *Gruninger*, 14 Wall. 570, 577; *Fire Ins. Assn.* v. *Wickham, supra*). But here the very formality of the agreement suggests a purpose to affect the legal relations of the signers. One does not commonly

pledge one's self to generosity in the language of a covenant. That the parties believed there was a consideration is certain. The document recites the engagement and the coming marriage. It states that these are the " consideration " for the promise. The failure to marry would have made the promise ineffective. In these circumstances we cannot say that the promise was not intended to control the conduct of those whom it was designed to benefit. Certainly we cannot draw that inference as one of law. Both sides moved for the direction of a verdict, and the trial judge became by consent the trier of the facts. If conflicting inferences were possible, he chose those favorable to the plaintiff.

The conclusion to which we are thus led is reinforced by those considerations of public policy which cluster about contracts that touch the marriage relation. The law favors marriage settlements, and seeks to uphold them. It puts them for many purposes in a class by themselves (*Phalen* v. *U. S. Trust Co.*, 186 N. Y. 178, 181). It has enforced them at times where consideration, if present at all, has been dependent upon doubtful inference (*McNutt* v. *McNutt*, 116 Ind. 545; *Appleby* v. *Appleby*, 100 Minn. 408). It strains, if need be, to the uttermost the interpretation of equivocal words and conduct in the effort to hold men to the honorable fulfilment of engagements designed to influence in their deepest relations the lives of others.

The judgment should be affirmed with costs.

CRANE, J. (concurring). I concur for affirmance and agree with what Judge CARDOZO has said about the law of consideration, but I prefer other reasons for my conclusions in this case.

Marriage settlements are usually made between husband and wife; but marriage settlements by third parties have been recognized by law. (Schouler's Dom. Rel. [5th ed.]

sec. 178; *Phalen* v. *U. S. Trust Co.*, 186 N. Y. 178.) The policy of the law to uphold and enforce such contracts is applicable to both classes.

Count Gulinelli and the defendant's daughter being engaged, the defendant, through his lawyer, prepared and executed the agreement in question on the 16th day of January, 1902, and handed it to his prospective son-in-law on the 18th of January, 1902. Two days thereafter Gulinelli and the defendant's daughter were married. This formal document reads in part as follows:

" Whereas, Miss Blanche Josephine Schweizer, daughter of said Mr. Joseph Schweizer and of said Mrs. Ernestine Teresa Schweizer, is now affianced to and is to be married to the above said Count Oberto Giacomo Giovanni Francesco Maria Gulinelli.

" Now, in consideration of all that is herein set forth the said Mr. Joseph Schweizer promises and expressly agrees by the present contract to pay annually to his said daughter Blanche, during his own life and to send her, during her lifetime, the sum of Two Thousand Five Hundred dollars, or the equivalent of said sum in Francs, the first payment of said amount to be made on the 20th day of January, 1902."

The only reasonable inference to be drawn from these facts is that this agreement was a marriage settlement made by the father upon his daughter in view of the impending marriage and to take effect upon the marriage. The marriage having taken place, the settlement became binding.

In the *Phalen Case* (*supra*) it was said by this court: " The strict legal definition of consideration need not here be discussed, since marriage settlements have always been regarded as exceptions to the general rule upon this question." (p. 186.)

If, however, consideration were necessary for this marriage settlement, the marriage was that consideration.

The parties were not bound by the recitals in the instrument, but could show, by surrounding circumstances and by the natural inferences, the actual consideration. (10 Ruling Case Law, 1042; *Barker* v. *Bradley,* 42 N. Y. 316, 320; *Wheeler* v. *Billings,* 38 N. Y. 263, 264; *Arnot* v. *Erie Railway Co.,* 67 N. Y. 315, 321; *Ferris* v. *Hard,* 135 N. Y. 354, 363; *Sturmdorf* v. *Saunders,* 117 App. Div. 762; affd., 190 N. Y. 555.)

This case is similar to *Coverdale* v. *Eastwood* (L. R. 15 Eq. 121); *Laver* v. *Fielder* (32 Beav. 1); *Keays* v. *Gilmore* (Irish Rep. 8 Eq. 290); *Bold* v. *Hutchinson* (20 Beav. 250), and *Ayliffe* v. *Tracy* (2 P. Wms. 65).

Romilly's words in *Laver* v. *Fielder* (*supra*) are pertinent here. " It is of great importance that all persons should understand, that when a man makes a solemn engagement upon an important occasion, such as the marriage of his daughter, he is bound by the promise he then makes. If he induce a person to act upon a particular promise, with a particular view, which affects the interests in life of his own children and of the persons who become united to them, this Court will not permit him afterwards to forego his own words, and say that he was not bound by what he then promised."

The trial court to whom all the facts were submitted was justified in finding that this agreement was a marriage settlement by a father upon his daughter and that it influenced or induced the parties, at least in part, to marry *at the time* they did and was, therefore, a legal agreement.

Hiscock, Ch. J., Cuddeback, Pound and Andrews, JJ., concur with Cardozo, J., and Crane, J., concurs in opinion; Collin, J., not voting.

Judgment affirmed.