28183. CADY *v.* CADY, executor.

DECIDED JULY 16, 1940. REHEARING DENIED JULY 30, 1940.

*W. E. & W. G. Mann,* for plaintiff in error.
*D. W. Mitchell, W. M. Henderson,* contra.

STEPHENS, P. J. W. V. Cady, as executor of the will of Eugene E. Cady, brought suit against I. E. Cady, to recover the balance due on a promissory note executed by the defendant on April 19, 1923, and maturing on April 19, 1939, in favor of E. E. Cady. The defendant by plea and answer admitted the execution of the note, but denied that it was due, and set up that the note was given to the payee in payment of the purchase-money of a certain tract of land purchased by him from the payee on April 19, 1923, and that the payee on the same date gave to the defendant his bond in which he agreed to convey to the defendant, on payment of the note, the legal title to the land sold.

The defendant alleged that the plaintiff did not have any right to enforce the collection of the note, because of a supplemental written agreement entered into with him by E. E. Cady, on March 7, 1924, such agreement being as follows: "In consideration of the premises, the natural love and affection each of the parties has for the other, it is mutually understood and agreed that the party of the first part and his wife, who now live in the house with the

party of the second part, are to have the use and occupancy of the two rooms now occupied by them, and are to have access to the kitchen in the said house for cooking purposes, and are also to have the privilege of one half of the barn located upon the said property for the accommodation of two head of cattle and one horse, for and during the natural life of the party of the first part and his wife; that is to say, that if the party of the first part should die, then and in that event the wife of the party of the first part is to enjoy the same privileges herein expressed as the party of the first part so long as she may live; this privilege is accorded to both party of the first part and his said wife. The party of the second part is to provide wood for the use of the party of the first part and his said wife, for the fireplace and stove, for their necessary cooking; and this is to continue so long as either the party of the first part or his said wife may live. The conditions as stipulated in said bond for title are to stand as now expressed so long as either the party of the first part or his said wife may live; the party of the second part having the right to exercise the conditions in said bond whenever he may like. The purpose and intent of this agreement is that the party of the first part and his said wife are to have a home where they now live as long as either of them may live."

The defendant alleged that by reason of this agreement the due date of the note was extended until after the death of the wife of E. E. Cady, and that she was in life at the time of the institution of the suit; and further set up in his plea and answer a claim against the estate of the payee, for rent by reason of the occupancy of the premises sold to him by the payee and the wife of the payee from the time of the execution of the bond for title, and also to recover the reasonable rental for the use of the cooking room, pasture, barn, and garden on the premises by E. E. Cady during his lifetime and by his wife after his death under the subsequent agreement, together with reasonable value of the wood furnished for the stove and fireplace used by E. E. Cady and his wife. The defendant alleged that the estate of the payee was indebted to him for these sums which totaled $17 a month, and that such sums were "claimed as damages for the breach of the said contract; and defendant sues herein and prays judgment therefor, to be recovered of the estate of E. E. Cady." The defendant further alleged that

"said sums should be credited to said note, and defendant pleads same as payment thereon, and prays that said amounts be offset as to this note, and that defendant by reason thereof is not indebted to plaintiff on said note in said sum sued for or in any amount, and on the contrary the estate of E. E. Cady is indebted to defendant in the sum of $1000, the amount in excess of the note credits aforesaid, and defendant prays verdict and judgment against the estate of E. E. Cady for said sum, and that the said note be credited with said payments in addition thereto, and that said note be delivered up and marked satisfied, and that said plaintiff as executor of the last will of E. E. Cady be required to make and execute to defendant a deed in conformity with the terms and conditions of said bond for title."

The plaintiff demurred generally to the answer and cross-action, on the ground that no defense was set up therein, and because there were no facts alleged to authorize any recovery by the defendant against the plaintiff. The judge sustained the demurrer and struck the plea and cross-action. The defendant excepted pendente lite. The case came on for trial, and the plaintiff introduced in evidence the note sued on and the defendant's answer. After the introduction of this evidence, the defendant's answer having been stricken on demurrer, the jury, by direction of the court, returned a verdict for the plaintiff in the full amount sued for. The defendant's motion for new trial was overruled, and he excepted.

The subsequent agreement entered into between E. E. Cady and the defendant did not have the effect of extending the due date of the note from the date stipulated in the note to any time in the future, as after the death of the survivor of E. E. Cady and his wife. The contention of the defendant that the provisions in the subsequent agreement that, "the conditions as stipulated in said bond for title are to stand as now expressed so long as either the party of the first part or his said wife may live," when considered in connection with the original contract and with the further provisions in the subsequent contract, that, "the purpose and intent of this agreement is that the party of the first part and his said wife are to have a home where they now live as long as either of them may live," had the effect of modifying the terms of the note and bond for title so as to postpone or defer the maturity of the payment of

the purchase-price for the land, as represented by the note, as long as either E. E. Cady or his wife might live, is without merit.

Under the subsequent agreement between E. E. Cady and the defendant, E. E. Cady and his wife acquired the right to live on the property sold to the defendant until after the death of both of them, and such agreement provided that the defendant was to furnish them with pasture and barn privileges for certain stock on the land together with firewood. This subsequent agreement gave the plaintiff's intestate and his wife the right to stay on the property during their lives, and they were entitled as a matter of right, under the contract, to live on the property and to obtain firewood, and they owe the defendant nothing therefor. Therefore the defendant's plea and cross-action which sought to recover a reasonable rental for the use and occupancy of these premises from the estate of E. E. Cady, and which sought to recover from the plaintiff executor such sum as damages "for the breach of said contract," and which sought to set off such sum against the note sued on, and to recover judgment for the difference above the amount due on the note, were without merit and subject to demurrer. The court did not err in striking the defendant's plea and cross-action, in directing the verdict for the plaintiff on the note, and in overruling the defendant's motion for new trial.

<em>Judgment affirmed. Sutton, J., concurs.</em>

FELTON, J., dissenting. I am of the opinion that the court erred in sustaining the general demurrer to the answer. The fundamental guide in the construction of contracts is the intention of the parties. The supplemental paper signed by both the parties states that it is an agreement, which is equivalent to saying that it is a contract. If it was intended as a contract, it would require a consideration to make it enforceable. In determining what the intention of the parties was it is necessary to consider what their rights were before the supplemental agreement was executed. E. E. Cady had agreed to sell the land, and was bound to do so by his contract, and at that time I. E. Cady was under no obligation to permit him and his wife to live in the house and have the other privileges mentioned. The supplemental agreement stated that it was made for the purpose of insuring these privileges to E. E. Cady and his wife, or to the survivor, till his or her death, and I. E. Cady agreed to allow the privileges. The difficulty in the case is

the construction of the sentence: "The conditions as stipulated in said bond for title are to stand as now expressed so long as either the party of the first part or his said wife may live." To say that this sentence means that the provisions of the bond shall simply be what they are for a certain length of time is to brand it with absurdity. Without being changed in some way, they would stay as they were forever. It seems to me that the expressed intention of the agreement demands the interpretation that the maturity of the note be extended to the death of the survivor of E. E. Cady and Mrs. Cady, in consideration of I. E. Cady's bond for his undertakings in the agreement. Otherwise the agreement was without consideration as to E. E. Cady, and was not binding on I. E. Cady. If this is true, the instrument was merely a "pledge of generosity" on the part of I. E. Cady. As was stated by the late lamented Justice Cardozo, in DeCicco v. Schweizer, 221 N. Y. 431 (117 S. E. 807, L. R. A. 1918E, 1004, Ann. Cas. 1918C, 816): "But here the very formality of the agreement suggests a purpose to affect the legal relations of the signers. One does not commonly pledge one's self to generosity in the language of a covenant." "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." Code, § 20-704(4). In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied. Code, § 20-704(6). The effect of this ruling would be to supply the word "suspended" after the word "stand." I think the court erred in sustaining the general demurrer and in dismissing the answer; and the further proceedings in the case were nugatory.