James D. Hopkins, J.
The defendant, A. E. Ottaviano, Inc. (hereinafter called “ Ottaviano ”), was the prime contractor under a written agreement with the State of New York for the construction of a section of the Palisades Interstate Parkway. Ottaviano entered into a written agreement with the plaintiff; that agreement provided that the plaintiff was to furnish and install certain H-beam steel piles and other equipment at a prescribed unit price, as a part of the work to be performed under the prime contract. The plaintiff now sues to recover a balance claimed to be owing from Ottaviano under the subcontract through an action to foreclose its public lien.
At the trial, an officer of the plaintiff testified that after the subcontract had been signed the parties entered into an oral *303 agreement modifying the written agreement. The plaintiff was not able to buy the steel piles from Bethlehem Steel Corporation because the latter refused to extend credit to the plaintiff. Ottaviano then agreed orally to guarantee to Bethlehem the payment of steel supplied for the job, and the plaintiff agreed orally that Ottaviano might deduct from the amount due under the subcontract the purchase price of the steel. Ottaviano notified Bethlehem by letter of the guarantee and informed Bethlehem that it might either bill Ottaviano directly, or bill the plaintiff;' Bethlehem chose to bill Ottaviano directly.
As a result of this arrangement, Bethlehem supplied the necessary steel, the plaintiff installed the piles, and Ottaviano paid Bethlehem directly for the steel. The dispute between the parties grows out of the credits applied by Ottaviano against the amount due to the plaintiff.
The officer of the plaintiff further testified that the State paid for the steel piles installed on the job by a footage measurement. The method of measurement requires some explanation. The steel received from Bethlehem was of a specified length; it was then placed in a lead and driven into the ground until refusal, i.e., until it could be forced no further. As a natural consequence there were instances where portions of the steel beams were not driven their entire length; the portion of the beams remaining above ground were cut off, and, if of a sufficient length, the cut offs were spliced together and used again. Under existing practice the State paid for the entire footage of all steel beams placed into a lead; thus it became inevitable that the State paid for a portion of an individual steel beam twice, if that beam were not driven its entire length initially.
Ottaviano took credit for 17,063 feet of steel certified as used by the State; on the other hand, it had purchased from Bethlehem only 16,032 feet for the job. In addition, it charged the plaintiff for freight on the steel certified by the State. The plaintiff sues for the alleged excessive credits in the sum of $2,342.52, plus $25.50 for a balance due under the subcontract, or a total sum of $2,368.02.
Ottaviano offered no testimony to controvert the proof of the plaintiff, but rested on plaintiff’s case. Under these circumstances, the plaintiff’s proof will be construed most strongly in its favor (Milio v. Railway Motors Trucking Co., 257 App. Div. 640; Bormann v. Phipps Estates, 260 App. Div. 657; Parkas v. Parkas, 265 App. Div. 521). Indeed, Ottaviano’s defense is based not on any denial of the plaintiff’s testimony, but rather on the asserted invalidity of the oral modification of the subcontract on two grounds.
*304 First, Ottaviano points out that the subcontract provided that it might “not be changed or modified except by an instrument in writing executed by both parties ”, Hence, it argues that the attempted oral modification fails as a violation of section 33-c of the Personal Property Law. Section 33-c is in nature an extension of the doctrine embodied in the long prevailing Statute of Frauds (Bright Radio Labs. v. Coastal Commercial Corp., 4 A D 2d 491, affd. 4 N Y 2d 1021). By its' terms, however, and by case law, an executed oral modification does not fall within its ban (see Alcon v. Kinton Realty, 2 A D 2d 454; Einsig v. Aulisio, 286 App. Div. 1127; Arndt v. Leff, 14 Misc 2d 677). Here it is clear that the contract has been fully executed. The provisions of section 33-c do not, therefore, render unenforcible the oral modification.
Secondly, Ottaviano claims that the oral modification was without consideration and, accordingly, not binding. True, the plaintiff was plainly obligated both to furnish and install the steel piles; in this context, Ottaviano’s agreement to buttress the plaintiff’s credit so that the steel fabricator would make deliveries seems without consideration, for a promise made to induce a party to perform that which he has contracted to do is not supported by consideration (De Cicco v. Schweizer, 221 N. Y. 431, 435; 269 Canal St. Corp. v. Zurich Gen. Acc. Liab. Ins. Co., 226 App. Div. 516, affd. 252 N. Y. 603). But again, this rule applies only to executory contracts; and a party may not defend against an executed contract on the ground of want of consideration (McKenzie v. Harrison, 120 N. Y. 260, 264; 1 Williston, Contracts [3d ed.], § 130A, p. 543; cf. Higgins Auto Co. v. Stanley Motor Carriage Co., 119 Misc. 395, 397).
For these reasons, the objection of Ottaviano to the reception of the evidence of the oral modification is overruled, and the change to which the plaintiff’s officer testified is accepted as enforcible. The court must still determine whether under the provisions of the modification as properly interpreted, the plaintiff may recover.
It is a fair inference from the evidence that if the plaintiff had both supplied and installed the steel without any change in the subcontract, it would have been entitled to compensation based on the State’s method of measurement. There is no evidence in this case that the plaintiff’s compensation was to be changed because Ottaviano agreed to put its credit behind the plaintiff, or that, as a price for its guarantee to Bethlehem that it could take a credit against payment due to the plaintiff for steel not purchased. Indeed, as it now stands, Ottaviano has *305 not only taken credit for steel not purchased, but also for freight on steel not shipped.
We do not think that Ottaviano can claim credit for the charges for steel not bought or shipped. In a sense, Ottaviano merely substituted itself for Bethlehem as a supplier, and could not charge the plaintiff for the steel artificially measured by the State, any more than Bethlehem could. It follows that the plaintiff is entitled to a judgment in the sum of $2,368.02.