George Terry **YOUNG**, Appellee,

v.

**STATE OF MARYLAND**, Appellant.

No. 71–1523.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 25, 1971.

Decided Feb. 7, 1972.

Sobeloff, Senior Circuit Judge, dissented and filed opinion.

Robert A. DiCicco, Asst. Atty. Gen. of Maryland (Francis B. Burch, Atty. Gen. of Maryland, Alfred J. O'Ferrall, III, Asst. Atty. Gen. of Maryland on brief), for appellant.

Alan J. Bloom, Baltimore, Md., for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Senior Circuit Judge, and RUSSELL, Circuit Judge.

RUSSELL, Circuit Judge:

At a trial without a jury, the appellee was convicted of rape and burglary in 1960 before the Criminal Court of Baltimore, Maryland, and received a death sentence for rape and ten years' imprisonment for burglary. On appeal, his conviction was affirmed. His death sentence, however, was commuted by executive action to confinement for life. He thereafter filed for post-conviction relief in the State Court, and, upon the exhaustion of State remedies without success, he applied to the District Court for *habeas* relief. The District Court granted such relief and the State appeals. We reverse.

The District Court based its conclusion in favor of *habeas* relief on the allegedly improper admission in evidence of a trenchcoat, taken after appellee's arrest from a room in his father's home where he slept, on which there were spermatozoa stains. It found the search, as a result of which the trenchcoat was secured, violative of the appellee's Fourth Amendment rights and held that for such reason it was inadmissible. We find it unnecessary to determine the validity of the search, though it may not be inappropriate to add that there appears to be support for a finding of validity. The admission of the trenchcoat was harmless error beyond a reasonable doubt and it was accordingly immaterial whether the trenchcoat had been illegally seized. United States v. Simuel (4th Cir. 1971) 439 F.2d 687, 689; United States ex rel. Di Rienzo v. Yeager (3d Cir. 1971) 443 F.2d 228, 231; Serrano v. Hocker (9th Cir. 1971) 444 F.2d 1093; United States v. Manning (5th Cir. 1971) 440 F.2d 1105, 1111; United States v. Rodriguez (9th Cir. 1971) 438 F.2d 1164, 1167.

The appellee admitted the act of intercourse. He, also, testified that during the act he wore his trenchcoat. If he had denied wearing the trenchcoat during the alleged illegal act, it might be argued that the admission may have involved some prejudice, since it would have indicated haste and would have supported an inference of force. But, as has been observed, *he did not deny wearing the trenchcoat*. Nor was he prejudiced by the fact that there were spermatozoa stains on the coat. Again, the presence of such spermatozoa stains could only have prejudiced appellee's case if he had denied the intercourse. *But he admitted the act of intercourse.* The point in the case was whether the intercourse was by consent or by force.

The appellee testified that he and two companions broke the lock on the apartment of the prosecutrix and thereby gained entrance into her apartment for the purpose of burglarizing it, and that, while they were so engaged, the prosecutrix, seemingly indifferent to the burglary of her apartment going on before her eyes, besought the favor of the appellee, who, without removing his trenchcoat, left the act of burglary to his companions, and indulged her. The prosecutrix's testimony, on the contrary, supported the prosecution's theory of forcible rape. The credibility of the parties and the believability of their conflicting stories were thus the only issues in the cause. The admission of the trenchcoat

added nothing to the credibility of the prosecution's version of the event and similarly created not a tittle of prejudice to the appellee's claim in defense.

It is suggested that, though no apparent prejudice to the appellee can be immediately conceived in the admission of the trenchcoat, we should assume that, unless it were prejudicial to appellee's defense, the State would not have offered it in evidence. Under such an argument, the admission of any improper evidence by the State, however, immaterial and harmless it might appear, would be regarded as prejudicial and could never be held to be harmless. The authorities, however, are abundant, wherein the admission of evidence, even though found to be improper, has been declared harmless error under the rule enunciated in *Chapman* and *Harrington*.[1] See, for instance, Chambers v. Maroney (1970) 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94; United States v. Simuel, *supra;* United States ex rel. Rosenberg v. Mancusi (2d Cir. 1971) 445 F.2d 613, 619; United States v. Mendoza (9th Cir. 1971) 441 F.2d 1107, 1108; Monteiro v. Picard (1st Cir. 1971) 443 F.2d 311, 313; United States v. Ferrone (3d Cir. 1971) 438 F.2d 381, 386, cert. den. 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430. Indeed, any other conclusion would make the harmless error rule meaningless.

During argument in this Court, the possibility that the trenchcoat may have been improperly used by the police to induce the appellee's confession was suggested. Until that time, there had not been even a remote contention either in the State Court or in the District Court that appellee's confession had been induced by the seizure of the trenchcoat. Not only had no such contention been raised in the State Court (Cf., Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438, decided December 20, 1971)

but there is no evidence in the record to support such contention. The appellee has never testified he was coerced in giving his confession nor proffered any other evidence of such coercion. This Court, on a record barren of any evidence that the confession was coerced, may not assume its involuntariness. Such a finding would have to be supported by some evidence in the record. If there is any basis in fact for such a claim, the appellee must present it initially to the State Court where the facts can be properly ascertained and a record had on which a proper finding of coercion *vel non* may be made; the issue may not be considered at the appellate stage in this proceeding in the absence of both a presentation of the claim to the State Court and a factual basis in the record for the claim.

The judgment of the District Court is accordingly reversed, with direction to dismiss the petition for a writ of *habeas corpus* herein.

Reversed.

SOBELOFF, Senior Circuit Judge (dissenting):

The State of Maryland prosecutes this appeal from an order of the District Court (Thomsen, J.) granting habeas corpus relief to George Terry Young, Jr., who was convicted in a State court of raping a woman with whom he had formerly cohabited. The trial court imposed a death sentence, but this was later commuted by the governor to life imprisonment.

I respectfully but earnestly dissent from the majority decision reversing the District Court. In my view, not only was the search and seizure here involved forbidden by the Fourth Amendment, but petitioner was so prejudiced thereby that the conviction should not stand. By forcing this case under the rubric of "harmless error" the majority skirts the issue and opens the door to a substantial

1. Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241; Harrington v. California (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

erosion of the Fourth Amendment's protections.

The District Court agreed with Young's contention that his conviction was fatally infected by the illegal seizure of his trenchcoat stained with spermatozoa from the alleged rape. My brethren, without citation of authority, declare that "there appears to be support for a finding of validity [of the search]." In this situation they embrace the theory that the introduction of the coat into evidence did not work to petitioner's detriment at his trial; they therefore find it "immaterial whether the trenchcoat had been illegally seized." I differ with my colleagues both as to the validity of the search and their application of the harmless error doctrine. First in order is a scrutiny of the search.

### I. *The Constitutional Violation*

The search and seizure upon which Young bases his petition for habeas corpus occurred while he was in police custody. The record discloses that the police went to the home of George Terry Young, Sr., petitioner's father, without a search warrant. Mr. Young testified that the police told him they "wanted some things for [George, Jr.] to wear." This was not only uncandid but actually deceptive. There is reason to believe that, if the police had not misled the father as to the purpose of the search, he would not have permitted it to be made.[1] Upon the false representation that the police had come on behalf of the son, to get some things for him to wear, the father was induced to admit them to a furnished basement room, petitioner's regular sleeping quarters, in which he kept all of his personal belongings. The trenchcoat was found in that room and removed by the police.

The State's sole attempt to sustain the legality of this warrantless search is an assertion that Young's father consented to it. I would reject this contention, for even if he had given an informed consent, the father lacked the necessary legal authority. The District Court found as a fact that, although the house in which the search occurred was owned by Young, Sr., the room in which the coat was found was "set aside for Young [Jr.'s] use." There is no justification for disturbing this finding, amply supported as it is by the uncontroverted testimony of both the petitioner and his father. This being so, under the principles enunciated by this court in Reeves v. Warden, 346 F.2d 915, 924–925 (4 Cir. 1965), Young's father had no right to consent to the warrantless search of a room or area exclusively occupied by his son. *See* Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Shorey v. Warden, 401 F.2d 474, 479 (4 Cir.), cert. denied, 393 U.S. 915, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968).

The suggestion has been advanced that the father, as the owner of the house, was empowered to consent to the search because, it is asserted, petitioner was not the exclusive occupant of the furnished basement room and thus the area searched was no different from any other common area of the house. This conclusion rests on a theory that the entire Young family had access to petitioner's room. However, the record clearly establishes that no other member of Young's family used the room for anything other than a passageway to other parts of the basement. Young, a 39-year-old bachelor, had all of his belongings in his room and the family kept theirs elsewhere in the house. In fact, petitioner's father furnished the basement room specifically for his son and installed a built-in bar for him. Young regularly paid his father rent for the room.

In Stoner v. California, *supra,* the Supreme Court held that mere access, for a limited purpose, to the living quarters of another does not confer authority to

---

1. Mr. Young testified, in a post-conviction hearing in the state court:
   "I didn't object to the police taking it [the coat]. * * * I thought he was coming to get it for [George, Jr.] to wear. I was trying to find out what he came for."

consent to a warrantless search. To authorize a police invasion of quarters reserved for the use of one individual, more must appear than that another consenting to the search was not forbidden to enter the area.

Indeed, this circuit, in Reeves v. Warden, *supra,* and in Shorey v. Warden, *supra,* has recognized that a room or area can be set aside exclusively for an individual's use even though another person has access to that room or area for a limited purpose. In *Reeves,* we held that, although the suspect's mother often entered his room to put his laundry away in a bureau, "the room in question and the bureau in it [were] set aside exclusively for [defendant's] regular use." This being so, the mother's consent to a warrantless search of the room and bureau was held ineffective because "she was without authority to consent to the search of Reeves' room and the bureau in it." 346 F.2d at 924–925.

Similarly, Young's family, although permitted to enter and pass through the room where Young slept to reach other parts of the basement, was without authority to consent to a police search of the room. If the family were more affluent, they could have afforded a larger home with an entirely separate compartment for their grown son. But in the existing circumstances, the basement area was petitioner's home, as much as people of that station could make it so. Young was entitled to the same constitutional protection as the occupant of a more pretentious dwelling. In any case, it would be absurd to insist that to protect one's own bedroom from warrantless incursion by police officers it must be made an impenetrable fortress, secure against even the casual passage of members of the family.

Since no justification is offered for the search other than the father's consent, the constitutional violation is palpable.

## II. *Harmless Error*

Concluding that petitioner's Fourth Amendment rights were violated, the next inquiry must be whether the use of the illegally-seized evidence prejudiced the defendant at trial—either directly or indirectly. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It cannot be overemphasized that the burden is on the State to prove that the error in admitting the tainted evidence, or any evidence derived therefrom, was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). More specifically, the question is whether there is a "reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

The majority seem to proceed from the mistaken premise that it is the petitioner's duty to show that he suffered injury from the violation of his constitutional rights. This is a mistaken approach. The Supreme Court, recognizing the difficulty of proving whether injury followed from a violation of this character, has taught us in categorical and unambiguous language that the onus is on the State to dispel any uncertainty beyond a reasonable doubt. There is enough reason here to infer possible prejudice to the petitioner. As I shall show, it is not farfetched or fanciful to view the violation here as harmful to the appellee-petitioner in the absence of a strong showing of harmlessness.

### 1. *Direct Prejudice.*

At the outset, it should be noted that the proper inquiry is not whether to the appellate court the evidence in question seems logically irrelevant to the determination of petitioner's guilt. Rather, this court is faced with the admittedly more difficult task of divining the possible effect of the stained trenchcoat on the mind of the trier of fact, in this case the state trial judge. If, rightly or wrongly, logically or illogically, the trial judge, who admitted the coat without qualification, was swayed by the coat or arguments of the prosecution concern-

ing the coat, the rape conviction should not stand.

Young contends his trenchcoat, bearing spermatozoa stains, was, in a measure, probative of the case against him and thus its introduction into evidence was not harmless error. The prevailing opinion, however, adopts the present position of the State that the stained trenchcoat proved no more than the fact of intercourse, which Young admitted, and was not probative of consent, which it terms the only disputed issue. Thus, it reasons, no prejudice resulted.

The prosecution, which introduced the coat and an accompanying laboratory report in support of its case in chief, must have had a definite reason in mind for doing so. The coat was the only physical evidence introduced against Young on the rape charge. The importance of the coat is emphasized by the fact that the prosecution did not see fit to introduce any other clothing Young was wearing at the time of the alleged rape, even though other clothing had also been seized by the police and was available at trial. Thus the introduction of the coat was not, as has been argued, merely the product of prosecutorial zeal, leading to the indiscriminate introduction of *all* available evidence, probative or not.

At trial, the prosecution seemingly argued, contrary to its contention on appeal, that production of the coat corroborated the story of the prosecutrix that forcible intercourse took place. Any added weight to her credibility would help the State's case in what amounted to a battle of oaths—Young's word against that of his ex-girlfriend. The state's attorney apparently argued that the stains on the coat showed a difficulty encountered in intercourse that was inconsistent with Young's claim of consent. The position of the state's attorney at the trial is thus set forth in the District Court's opinion:

"[T]he State argued and indeed still argues that the spermatozoa stains on the coat constituted some evidence of rape rather than voluntary intercourse."

The majority, contrary to the District Judge, would reject any suggestion as to the possible use of the coat by the prosecution because, to its mind, the presence of the coat in the case is equally consistent with the defendant's innocence as with his guilt. This approach groundlessly ascribes to the trial court the infallible logic of my brethren's hindsight and ignores the Supreme Court's command that a conviction cannot stand if there is a "reasonable possibility" (not necessarily a probability) that the illegally-seized evidence contributed to the conviction.

As pointed out by the District Judge, the prosecution has not met the heavy burden of dispelling the possibility of prejudice from the admission of the illegally-seized garment. Concededly, one cannot demonstrate to a complete certainty that the coat's admission into evidence was directly harmful. But the law does not hold Young to that requirement. Where there is uncertainty, as in this situation, the harmless error doctrine cannot be availed of by the State. It is the prosecution which faces the considerable burden of showing the error to have been harmless *beyond a reasonable doubt.* Chapman v. California, *supra;* Fahy v. Connecticut, *supra.* This obligation is not discharged simply by the State's hypothesizing on this appeal a neutral effect for the evidence complained of.

2. *Indirect Prejudicial Effects.*

A defendant may also be prejudiced indirectly by an illegal seizure. For example, a conviction may not stand if illegally-seized evidence induced a defendant either to confess or to make an admission which helped to establish the case against him. Amador-Gonzalez v. United States, 391 F.2d 308 (5 Cir. 1968); Barnett v. United States, 384 F.

2d 848 (5 Cir. 1967).[2] In fact, there is prejudice enough to prevent an error from being harmless if the erroneously admitted evidence impelled the defendant to take the stand where he otherwise might not have elected to do so, in order to offer an innocent explanation for the evidence against him. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

Young claims the introduction into evidence of the coat indirectly prejudiced him by forcing him to take the stand and repeat his earlier admission of intercourse so that he could renew his claim of consent to counteract the effects of the coat and the use made of it by the police. Moreover, he argues that his written confession of the burglary, which was also introduced at trial, and which contained an admission of one element of the rape charge—namely the fact of sexual intercourse—was prompted by the knowledge that the police authorities were in possession of the supposedly incriminating article of clothing.

The majority refuses to consider petitioner's contentions in this area because, in its view, he has not as yet raised them in either the state courts or the federal district court.

The doctrine of exhaustion of state remedies requires only that "the substance of a federal habeas corpus claim must first be presented to the state courts." Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (decided 12/20/71). There is no requirement that, before an argument supporting a federal habeas corpus claim is used in a federal court, the same supporting argument must have been presented to the state courts. The Seventh Circuit has spoken to this point:

> We do not think that section 2254 requires a state prisoner to petition the state courts for a reconsideration of a constitutional question (already decided adversely to him) prior to resorting to the federal courts *simply because the theory of a reported United States Supreme Court decision was not expressly recognized by, or even called to the attention of, the state court at the time of its earlier decision.* To so hold would unduly penalize the prisoner's interest in the ultimate disposition of his claim in a reasonably predictable fashion in deference to an oversensitive view of the desired relationship between federal and state courts. (Emphasis added.)[2a]

United States ex rel. Kemp v. Pate, 359 F.2d 749, 750–751 (7 Cir. 1966). *See also* Sullivan v. Scafati, 428 F.2d 1023, 1024 n. 1 (1 Cir. 1970), cert. denied, 400 U.S. 1001, 91 S.Ct. 478, 27 L.Ed.2d 452 (1971); Daugharty v. Gladden, 257 F.2d 750, 758 (9 Cir. 1958), cert. denied, 352 U.S. 1009, 77 S.Ct. 574, 1 L.Ed.2d 554 (1959).

---

2. "That the prosecutor may not profit directly or indirectly from an illegal search has been the keystone of the rule excluding illegally obtained evidence.

 \*       \*       \*       \*       \*

 "Even though statements are free of 'oppressive circumstances' and otherwise voluntarily rendered, they are not exempt from attack on constitutional grounds if they are the product of an illegal search." People v. Bilderbach, 62 Cal.2d 757, 767, 44 Cal.Rptr. 313, 401 P.2d 921 (1965). See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)

2a. The majority apparently is of the view that Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (decided 12/20/71), supports its position that Young has failed to exhaust state remedies.

*Picard* bears no such reading. It held only that state remedies were not exhausted as to an equal protection claim where petitioner's sole contention in the state courts was an entirely distinct claim—that he had been denied due process by not having been indicted by a grand jury. In so holding, however, the *Picard* opinion takes pains to limit its reach and to reaffirm, by name, the plain rule laid down in Kemp v. Pate:

> Obviously there are instances in which "the ultimate question for disposition," United States ex rel. Kemp v. Pate, 359 F.2d 749, 751 (CA 7 1966), will be the same despite variations in the legal theory or factual allegations urged in its support. 404 U.S. 270, 92 S.Ct. 509, 513, 30 L.Ed.2d 438.

It is the appellee's argument that the illegally-seized coat was improperly exploited to gain admissions from him and to force his decision to testify. These are not separate "claims," as the majority characterizes them, which had to be presented to the state court in that form in the first instance. Rather they are arguments in support of Young's basic claim in the state proceeding that he was the victim of an unconstitutional search and seizure. By relabeling these arguments as "claims" for exhaustion purposes, the majority has lapsed into an overly technical view of the exhaustion requirement.[3]

Young first admitted intercourse with the complainant, a woman with whom he had previously been cohabiting, in his written confession to the robbery. The record indicates that petitioner, who had been kept in incommunicado custody for 17 hours without responding to his captors' repeated importunities, finally confessed less than one hour after the coat was seized. Moreover, the confession itself, a transcript of a question and answer session, contains a pointed reference to the coat on the part of the police.[4] Thus, there can be no doubt that the police used the illegally-seized coat as a lever to pry from the prisoner the damaging admission of intercourse. Standing alone, this set of facts is sufficient to mandate a vacation of appellee's conviction. Wong Sun v. United States, 371 U.S. 471, 486–487 n. 12, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Nikrasch, 367 F.2d 740, 744 (7 Cir. 1966).

However, Young also claims a second source of indirect prejudice, that arising from his constrained decision to testify in his own behalf at trial. It was not until both the trenchcoat and the confession were admitted in evidence that Young decided to take the stand and once again acknowledge intercourse, renewing at that time his claim of consent.

A criminal defendant's decision whether or not to take the stand should be an unfettered one. The evidence he knows to have been amassed against him naturally enters into his choice whether or not to testify. But only lawfully obtained evidence should confront the defendant in making his decision. There can properly be no pressure upon a defendant to take the stand to explain away evidence against him which the police have come by unconstitutionally. Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); Fahy v. Connecticut, 375 U.S. 85, 91, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

### 3. *The Burden of Proof of Harmlessness in a non-Jury Trial.*

The fact that this trial was before a judge, not a jury, does not alter the problem. Only in retrospective analysis, is it possible to contend, as the state appears to contend in this appeal, that because the coat had no probative value on the question of rape, it played no part with the Judge in reaching the guilty verdict. More realistically, the not unlikely impact of the dramatic flourishing of the stained garment at the trial was to divert the fact finder from a true as-

---

3. The transcript of the proceedings in the District Court indicates quite clearly that claims of indirect as well as the direct prejudicial effects of the trenchcoat were before that court.

    For example, in discussing the coat's admission, the District Judge perceptively observed: "the fact that [Young] thereafter took the stand and admitted [sexual intercourse], the decision might have been influenced by the trench coat."

    Again, the Assistant Attorney General, in arguing for the state in the District Court, said: "Getting back to the question of the admissibility of the confession,

I respectfully submit that, of course, Mapp v. Ohio was not decided until after this case was heard." Obviously, Mapp v. Ohio, a Fourth Amendment case, can only be relevant to the admissibility of a confession if there is an assertion that the confession was the fruit of an illegal search and seizure—precisely the issue here.

4. "Q. George, I show you an olive drab, Army type trench coat. Is this the coat you were wearing at the time of the assault? A. Yes sir."
This excerpt was a recapitulation of Young's earlier and more extensive interrogation.

sessment of this item of evidence. Judges' minds are not completely impervious to such misleading influences. Judges are not so different from juries as to warrant exemption of judge trials from the stringent rule that in a doubtful case such as this the harmless error rule cannot be successfully invoked unless harmlessness is shown beyond a reasonable doubt.

There are situations where it may be argued that a judge, familiar with the restraints of the law, is more adept than a lay juror at excluding from consideration evidence erroneously admitted at trial. See, for example, Cockrell v. Oberhauser, 413 F.2d 256, 258 (9 Cir. 1969), cert. denied, Cockrell v. Carter, 397 U.S. 994, 90 S.Ct. 1130, 25 L.Ed.2d 401 (1970), where one defendant in a joint trial was tried by a jury and the other by the court. It was observed on appeal that, the trial judge having carefully instructed the jury on the limited admissibility of certain statements against the defendant on trial before the jury, there was nothing to suggest he was incapable, in the non-jury trial, of applying the law he had himself announced.

Here, however, the trial judge was in no way alerted to the possible inadmissibility of the coat and its fruits because, at the time of Young's trial, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), had not yet been decided.[5] Thus there is no reason to think the trial judge, who had, without restriction, received the evidence, failed to take it fully into account in determining Young's guilt.

A broad relaxation, in judge trials, of the Supreme Court's oft-declared rule requiring strict proof of harmlessness would constrict the rule in such trials to a mere vacuity.

### 4. *The Record on Appeal.*

The record is tantalizingly incomplete; the trial transcript omits counsel's arguments during and at the close of the case—the very portions which could shed light on our inquiry. Eleven years have passed since Young's arrest and interrogation and his trial counsel is now dead, so the gaps in the record can never be adequately filled. The incomplete state of the record prevents a firm verification of the precise effect of the coat on the trial judge and the possibility that Young's admission and testimony were fruits of the illegally-seized trenchcoat.

Some errors are demonstrably harmless beyond a reasonable doubt; others are as plainly harmful. Where there is a reasonable possibility that harm may have been done, it is incumbent on the State, not the defendant, to resolve the issue. The Supreme Court admonishes us that the State must establish its claim of harmlessness by the highest measure of proof known to the law—proof beyond a reasonable doubt. Chapman v. California, *supra;* Fahy v. Connecticut, *supra.*

In the instant case the context raises a substantial inference of prejudice. In similar circumstances, the Supreme Court has said:

It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. "The springs of conduct are subtle and varied," Mr. Justice Cardozo once observed. "One who meddles with them must not insist on too nice a measure of proof that the spring which he released was effective to the exclusion of all others." Having "released the spring" by using the petitioner's unlawfully obtained confessions against

---

5. Young's trial concluded on March 17, 1961, several weeks before Mapp v. Ohio was decided. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court held that the *Mapp* principle applied retroactively to all cases on appeal at the time of the *Mapp* decision. Young's case falls in this group.

him, the Government must show that its illegal action did not induce his testimony. (Footnotes omitted.)

Harrision v. United States, 392 U.S. 219, 224–225, 88 S.Ct. 2008, 2011, 20 L.Ed.2d 1047 (1968) (quoting De Cicco v. Schweizer, 221 N.Y. 431, 438, 117 N.E. 807, 810). No such showing has been made or attempted here.

The majority's decision penalizes Young for the incomplete record by shifting the burden of proof to him. This is in sharp conflict with the decisions of the Supreme Court. To such a result I cannot agree.

The District Judge has decided the case correctly. I would affirm his order granting the writ.