**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Valdez RODRIGUEZ, Defendant-Appellant.**

**No. 26051.**

United States Court of Appeals,
Ninth Circuit.

Feb. 18, 1971.

Rehearing Denied March 22, 1971.

---

George Rayborn, (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, DUNIWAY and TRASK, Circuit Judges.

PER CURIAM:

Rodriguez appeals from his conviction, following a jury trial, for conspiring with one Samuel Silva to sell and possess depressant and stimulant drugs (i. e., barbiturates and amphetamines) in violation of 21 U.S.C. § 331(q) (2) and (3) and § 360a(b) and (c) (1). Appellant was acquitted on a count charging possession of amphetamines (21 U.S.C. § 360a(c)). His co-conspirator, Silva, who was not charged in the conspiracy count, pled guilty to a single count of possessing amphetamines. We affirm.

### Constitutionality of the Statute

Appellant contends that 21 U.S. C. § 331(q) (3) and § 360a(c) (1)[1] are unconstitutional because Congress is without constitutional authority to regulate traffic in barbiturates and amphetamines. This court has already concluded that regulation of these drugs, along with LSD, is a legitimate exercise of the commerce power. Deyo v. United States, 396 F.2d 595, 598–599 (9th Cir. 1968). Accord, United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L. Ed.2d 495 (1970) (amphetamines); White v. United States, 399 F.2d 813, 820–825 (8th Cir. 1968) (amphetamines); White v. United States, 395 F. 2d 5 (1st Cir.), cert. denied, 393 U.S. 928, 89 S.Ct. 260, 21 L.Ed.2d 266 (1968) (LSD).

David C. Marcus, (argued), Los Angeles, Cal., for defendant-appellant.

1. Section 331(q) (3) prohibits:
   "(3) (A) the possession of a drug in violation of section 360a(c) (1) of this title * * *."
   Section 360a(c) (1) provides:
   "(c) No person, other than a person described in subsection (a) or (b) (2) of this section [relating to statutory exemptions for manufacturers, druggists, physicians, etc.] shall—
   (1) possess any depressent or stimulant drug for sale, delivery, or other disposal to another * * *."
   Section 321(v) (1) and (2) defines "depressant or stimulant drug" as including amphetamines and barbiturates.

### Search and Seizure

■ Rodriguez and Silva were arrested, without a warrant, at appellant's residence on June 18, 1969. Upon searching appellant's person, the arresting agents found a marked $100 bill that had been used earlier in the day by an undercover agent in purchasing drugs from Silva. Also found on appellant were paper markers used by Silva in accounting for drug sales purportedly transacted in concert with appellant. In appellant's kitchen cabinet was found a vial containing amphetamine tablets. Appellant contends that there was no probable cause for his warrantless arrest and that the scope of the search and seizure conducted incident thereto exceeded constitutional limits.

The initial question is whether the arresting agents reasonably could have believed, in light of the facts and circumstances within their knowledge and of which they had reasonably trustworthy information, that appellant had committed a crime. Long v. United States, 422 F.2d 1024, 1026 (9th Cir. 1970); United States v. Selby, 407 F.2d 241, 242–243 (9th Cir. 1970). The agents knew that on three occasions Silva had sold drugs to an undercover agent; that on each occasion Silva had stated that appellant was his source and that he, Silva, picked up the drugs from appellant, sold them, and returned the money to appellant; that an informant had also stated that appellant was Silva's source; that on June 11, 1969, one week before the arrest, agents had observed Silva enter appellant's residence; and that on the day of the arrest Silva had sold to an undercover agent approximately 50,000 amphetamine tablets and was observed shortly thereafter as he again entered appellant's residence.

Silva's statements identifying appellant as his source, taken in conjunction with the corroboration by another informant and subsequent surveillance, provided sufficient reliable information on which the agents reasonably could have concluded that appellant had committed a crime. See Spinelli v. United States, 393 U.S. 410, 415, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969);[2] Louie v. United States, 426 F.2d 1398 (9th Cir. 1970); United States v. De La Cruz Bellinger, 422 F.2d 723, 725 (9th Cir.), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L. Ed.2d 278 (1970); Rocha v. United States, 387 F.2d 1019, 1022–1023 (9th Cir. 1967), cert. denied, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968).[3]

Under the Fourth Amendment standards applicable either before or after the decision in Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the seizure of the marked money and paper markers from appellant's person incident to arrest was proper. As for the seizure of the vial of amphetamine tablets from the kitchen cabinet, pre-*Chimel* standards must be applied since the search and seizure occurred prior to June 23, 1969, the date of decision in *Chimel*. Williams v. United States, 418 F.2d 159, 162 (9th Cir. 1969), cert. granted, 397 U.S. 986, 90 S. Ct. 1120, 25 L.Ed.2d 394 (1970). Thus, under the rationale of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), overruled in *Chimel*, the search of the kitchen cabinet was reasonably incident to the arrest. United States v. De La Cruz Bellinger, *supra*, 422 F.2d at 725–726. Moreover, even assuming *arguendo* that the tablets seized from the kitchen were beyond the

---

2. Although *Spinelli* involved the sufficiency of an affidavit in support of a search warrant, the Court noted that the analysis applied therein was "basically similar" to that required in determining whether the police had probable cause for an arrest without a warrant. 393 U.S. at 417 n. 5, 89 S.Ct. 584.

3. This case is distinguishable from Pulido v. United States, 425 F.2d 1391 (9th Cir. 1970), where there was nothing more to support the arrest than the uncorroborated statement of an apprehended narcotics offender identifying the appellant as his source. See Louie v. United States, 426 F.2d 1398, 1401 (9th Cir. 1970).

limits of a valid search, the fact that this evidence was the basis of the possession count on which the jury found for appellant indicates that the extent to which it may have been considered on the conspiracy count was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### Sufficiency of the Evidence

At appellant's trial, Silva, who had pled guilty and was awaiting sentencing, testified in detail as to his role as a "runner" for the illicit drug venture allegedly operated by appellant. His testimony was corroborated by an informant who testified that he had been introduced to Silva by appellant and told by appellant that Silva worked for him and that the two of them had drugs for sale. There was further corroboration by an undercover narcotics agent who testified that he had purchased drugs from Silva on three occasions and was told each time by Silva that he was working for appellant.

Appellant asserts that the government's entire case on the conspiracy charge is based on the untrustworthy testimony of an accomplice who was awaiting sentencing and who thus had good reason to try to aid the prosecution. However, the credibility of witnesses and the weight to be given to their testimony is for the jury to decide, and the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. E.g., United States v. Williams, 435 F.2d 642 (9th Cir. 1970). The jury was properly instructed to take great care in weighing the unsupported testimony of an accomplice. And here, of course, there was substantial corroboration.

Affirmed.