**UNITED STATES of America,
Plaintiff,**

v.

**Walid WARWAR et al., Defendants.**

**Crim. No. 43–72.**

United States District Court,
D. Puerto Rico.

May 12, 1972.

Julio Morales Sanchez, U. S. Atty., Old San Juan, P. R., for plaintiff.

Santos P. Amadeo, Rio Piedras, P. R., for defendants.

ORDER

TOLEDO, District Judge.

This cause is before us on a Motion to Dismiss filed on March 15, 1972, by co-defendants Walid Warwar and Mayra Egues.[1] Said motion requests the dismissal of those counts of the Indictment which relate to Title 21, United States Code, Section 841(a) (1).[2]

The moving codefendants challenge the constitutionality of Title 21, United States Code, 841(a),[3] asserting that the statute constitutes an usurpation by the federal government of the jurisdiction of the state governments and that it encroaches upon matters delegated to the sovereign state by the Tenth Amendment of the United States Constitution, for the statute exceeds the power delegated to Congress under the commerce clause, since there is no interstate or foreign commerce involved in the case herein to give federal jurisdiction.

The Court has had the benefit of the Memoranda of Law submitted by the parties and otherwise, being fully advised in the premises, finds that there is no merit in codefendants' contention.

1. On February 10, 1972, at San Juan, Puerto Rico, a three count Indictment was returned charging Walid Warwar, Sammy A. Nader, Berta Marulanda and Mayra Egues, with violations of Title 21, United States Code, Sections 841(a) (1), 846 and 952(a). Codefendants Walid Warwar and Mayra Egues were arraigned on February 25, 1972. Codefendant Berta Marulanda has not joined codefendants Walid Warwar and Mayra Egues in the motion under consideration and is represented by different counsel who has requested severance of her case. Codefendant Sammy A. Nader has not been apprehended as of the day of this Order.

2. Count Three of the Indictment reads as follows:

"From on or about January 20, 1972 to January 25, 1972, Walid Warwar, Sammy A. Nader, Berta Marulanda de Mejías and Mayra Egues, the defendants herein, knowingly and intentionally did possess with the intent to distribute 497.6 grams (1.1 lb) of methylbenzoyl-ecgonine, a narcotic drug commonly known as cocaine, a Schedule II narcotic drug controlled substance in violation of Title 21, United States Code, Section 841(a) (1). (Title 21, United States Code, Section 841(a) (1) and Title 18, United States Code, Section 2)."

3. Section 841(a) of Title 21, United States Code, in its pertinent part, reads as follows:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance; or  *  *  *."

Although this is apparently the first case to reach this Court challenging the validity of Title 21, United States Code, Section 841(a) on constitutional grounds, the principles governing the resolution of the constitutional issue have been recently and repeatedly established as to leave no doubt that the instant enactment is valid.

The basic rationale invoked by Congress for the exercise of its jurisdiction in the Comprehensive Drug Abuse Prevention and Control Act of 1970,[4] is set forth in formal findings and declarations and codified at Title 21, United States Code, Section 801. There, Congress finds, inter alia, that the illegal importation, manufacture, distribution, possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people; that a major portion of the traffic in such substances flows through interstate and foreign commerce and that incidents of the traffic which are not an integral part of that flow, such as manufacture, local distribution and possession, nonetheless have a substantial and direct effect upon interstate commerce because, after manufacture, many controlled substances are transported in interstate commerce, controlled substances distributed locally usually have been transported in interstate commerce immediately before its distribution, and controlled substances possessed commonly flow through interstate commerce immediately prior to such possession; and that local distribution and possession of controlled substances contributed to swelling the interstate traffic in these substances. Title 21, United States Code, Sections 801(1) to (4). The Congress further finds that controlled substances manufactured and distributed intrastate cannot be differentiated from such substances manufactured and distributed interstate and concluded:

> "Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate. Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic. Title 21, United States Code, Section 801(5) and (6)."

In Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Supreme Court sustained statutes punishing extortionate credit transactions[5] without regard to any allegation or proof in an individual case of an effect on interstate or foreign commerce. There, as here, Congress had made formal findings setting forth the basis for its conclusion that the entire class of prohibited transactions adversely affected interstate commerce. Referring to the long line of cases beginning with United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941) and culminating in Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), and Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the Court held that it was clearly established that Congress had power under the Commerce Clause to reach whole classes of activities rationally deemed to affect commerce, and that where the class of activities is regulated and that class is within the reach of federal power, the courts have no power "to excise, as trivial, individual instances" of the class. Perez, supra, 402 U.S. at 150–154, 91 S.Ct. at 1361. The court then examined the formal findings of Congress underlying the extortionate credit transac-

---

4. For the legislative history and purpose of the Comprehensive Drug Abuse Prevention and Control Act of 1970, see 1970 United States Code Congressional and Administrative News, p. 4566, et seq.

5. In the *Perez* case, the statute involved was Title II of the Consumer Credit Protection Act, 82 Stat. 159, Title 18, United States Code, Section 891 et seq.

tions provisions and concluded that Congress had a more than adequate foundation for its conclusion that such transactions interfered with interstate commerce. These general principles govern the similar exercise of legislative power involved in this case before us.

From the above, we can readily see that the sole issue before this Court is whether Congress' formal findings have a rational basis on "any state of facts either known or which could reasonably be assumed" by Congress.[6] If so, the instant statutes must be upheld. See United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); Katzenbach et al. v. McClung et al., 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); Maryland et al. v. Wirtz et al., supra, 392 U.S. at 190, n. 13, 88 S.Ct. 2017.

It is not difficult to perceive a rational basis for the determination of Congress. As the House Committee Report pointed out, drug abuse in the United States "is a problem of ever-increasing concern, and appears to be approaching epidemic proportions." House Report No. 91–1444, 91st Cong. 2d Sess. (1970), set forth at 1970 U.S.Code Congressional and Administrative News, pp. 4572–4574. That drug abuse is a national problem with inevitable effect upon interstate commerce and the general health and welfare would thus appear to be beyond cavil. With respect to the critical determination that it is necessary to regulate *all* manufacture, distribution and possession of such drugs and substances, as are proscribed in the Act, including the intrastate transactions, the finding

that such regulation is necessary since it is impossible as a practical matter to distinguish the former category from the latter, is also clearly reasonable. Indeed, this same rationale was invoked by Congress in connection with 1965 amendments to the Federal Food, Drug and Cosmetic Act, United States Code, Sections 311(q) and 360a, punishing transactions in amphetamines, barbiturates and other substances with potential for abuse, without regard to a showing in any particular prosecution of an effect on intrastate commerce.[7]

The United States Courts of Appeals which have had occasion to consider the validity of the last mentioned statutes against the identical type of challenge advanced here, unanimously sustained them as within the power of Congress under the Commerce Clause. See White v. United States, 395 F.2d 5 (1 Cir., 1968), cert. den., 393 U.S. 928, 89 S.Ct. 260, 21 L.Ed.2d 266 (1968); Deyo v. United States, 396 F.2d 595 (9th Cir., 1968); Whalen v. United States, 398 F.2d 286 (8th Cir., 1968); White v. United States, 399 F.2d 813 (8 Cir., 1968); United States v. Cerrito, 413 F.2d 1270, (7 Cir. 1969), cert. den., 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1969); United States v. Rodriguez, 438 F.2d 1164 (9 Cir., 1971).

In United States v. Rodriguez, 336 F. Supp. 708–709 (D.C.Fla., 1972), the Court was confronted with a constitutional attack to Title 21, United States Code, Section 841(a) (1), identical to the one at bar. There, the Court upheld the constitutionality of the statute and held that "Congress' findings in the statute

---

6. The Court, in *Perez*, recognized that Congress need not make particularized findings in order to legislate, supra at 156, 91 S.Ct. 1357. However, Congress has employed this technique whenever in recent years it has sought to dispense, in crime-creating statutes, with the ordinary requisites of proof of an effect on interstate commerce in an individual case. See, e. g., Title 18, United States Code, Section 1511, 1955. Title VIII or the Organized Crime Control Act of 1970;

cf. also 18 United States Code, App., Sections 1201–1203, construed in United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488, decided by the Supreme Court on December 20, 1971.

7. See Title 21, United States Code, Sections 331(q) and 360a. These statutes, in effect, forerunners of the present Comprehensive Act, have been superseded by Title 21 United States Code, Section 801 et seq.

sub judice are sufficient, and that Congress had the power to enact Title 21, U.S.C. § 841(a) to control traffic in the enumerated controlled substances". With said decision, we are in agreement.

Therefore, the Court now holds that Section 841(a) (1) is constitutional and that the defendants' motion to dismiss is not well taken and should be and is hereby denied.

It is so ordered.